James F. ROBINSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–SC–000556–MR.

Supreme Court of Kentucky.

Nov. 18, 2010.

Jamesa J. Drake, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Christian Kenneth Ray Miller, Assistant Attorney General, Office of Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

On November 2, 2005, Deputy Coroner Michael Hall received a call to come to the home of Appellant's father, Frank Robinson. When Hall arrived, he found Appellant's 23–month–old stepdaughter, H.L., lying face-up on the living room floor. Hall checked her body and found no signs of life. H.L. was pronounced dead at six o'clock that evening by Chief Coroner Russell Roberts.

The autopsy of H.L. revealed approximately twenty-six bruises of differing ages to her face and head. In addition, H.L. had friable hair that could be pulled out by hand and two fractures at the base of her skull. The skull fractures caused hypoxic encephalopathy, a lack of oxygen to the brain as a result of swelling. The autopsy also revealed that H.L.'s left arm was wounded, with hemorrhages, contusions, bruises, a fractured humerus bone, and a torn rotator cuff. H.L.'s left radius bone was also broken and had been for several days. All other injuries were anywhere from a few days to a few weeks old. The toxicology report further showed the presence of two drugs at toxic levels in H.L.'s blood—promethazine, which goes by the brand name Phenergan, and alprazolam, which goes by the brand name Xanax. There was also cough syrup and Benadryl found in a urine sample.

Dr. Cristina Rolf, the medical examiner who performed the autopsy, testified that she believed the fatal injury was the subdural and subarachnoid hematomas caused by the dual fractures to H.L.'s skull. These injuries were consistent with what Dr. Rolf believed was a severe blow to the head. Additional testimony was given that the levels of drugs in H.L.'s body were in such a high concentration that they would be toxic to an adult and could cause respiratory depression and death.

Appellant and H.L.'s biological mother, Amber Robinson, were to be tried jointly for the murder. Prior to trial, Amber entered an open guilty plea on the advice of her attorney. No plea bargain was offered by the Commonwealth and Amber received a sentence of life imprisonment. Appellant was ultimately convicted of murder and the jury recommended a sentence of life imprisonment. He now appeals the final judgment entered as a matter of right. Ky. Const. § 110(2)(b).

■ Appellant's only claim of error is that there was insufficient evidence to support instructing the jury that he killed H.L. by either "overmedicating" or "beating" her. As such, Appellant contends

that the trial court violated his constitutional right to a unanimous verdict.

The instruction at issue is the following:

### INSTRUCTION NO. 5

### MURDER

You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about November 2, 2005, and before the finding of the Indictment herein, the Defendant killed [H.L.] by beating her, overmedicating her, and/or failing to provide proper medical care to her;

AND

B. That in so doing, the Defendant was wantonly engaging in conduct which created a grave risk of death to [H.L.] and thereby caused the death of [H.L.] under circumstances manifesting an extreme indifference to human life.

■ It has long been clear that in this state a defendant cannot be convicted of a criminal offense except by a unanimous verdict. *Cannon v. Commonwealth,* 291 Ky. 50, 163 S.W.2d 15 (1942); RCr 9.82(1). In the past, this Court has stated that a "combination" instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction under either theory. *Johnson v. Commonwealth,* 12 S.W.3d 258, 265–66 (Ky.1999); *Miller v. Commonwealth,* 77 S.W.3d 566, 574 (Ky.2002). As this Court stated in *Wells v. Commonwealth,* 561 S.W.2d 85 (Ky.1978):

"It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict can not be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other...."

*Id.* at 88 (quoting *People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989, 990 (1903)).

### There was sufficient evidence to support the theory that Appellant killed H.L. by "beating" her.

■ According to medical testimony from the doctor who performed the autopsy, H.L. sustained multiple skull fractures that ultimately led to her death. Appellant contends that the Commonwealth failed to prove beyond a reasonable doubt that Appellant killed H.L. by beating her. Appellant points to remarks made by the prosecutor during closing arguments stating: "I don't know who laid the licks to [H.L.]." This issue was not preserved at trial. Nevertheless, Appellant requests palpable error review under RCr 10.26.

■ After a review of the evidence presented, we find no palpable error. Appellant was the sole caretaker of H.L. for nearly the entire day on November 2, 2005, the day she was murdered. Testimony was given indicating that Appellant had previously threatened to kill H.L. and her mother. In addition, after her plea, Amber told the Commonwealth during an interview that she pled guilty to something she did not do. (She later recanted this statement, saying she was merely "playing dumb" to get information from the Commonwealth.). Testimony was also given by Berta Thacker, a corrections officer from the Pike County Jail who was responsible for guarding Amber. Officer Thacker testified that Amber stated she planned to take the blame for the murder because she did not want Appellant to get more jail time. Appellant testified in his own de-

fense, but the jury apparently did not believe his version of events, instead believing the witnesses for the Commonwealth. Deciding whose version to believe and weighing witness credibility is entirely within the jury's discretion. *See Ratliff v. Commonwealth*, 194 S.W.3d 258, 269 (Ky. 2006). *See also Webb v. Commonwealth*, 904 S.W.2d 226, 229 (Ky.1995) ("The decision as to whose story to believe is, of course, an issue for the jury to decide.").

In his brief to this Court, Appellant admits the Commonwealth established that either he or Amber was responsible for H.L.'s murder.[1] Faced with this, the jury ultimately believed the Commonwealth presented sufficient circumstantial evidence to prove that Appellant was responsible for the murder. This task of fact finding was solely within the jury's province and it is not for this Court to disturb that determination. As such, we find no error, palpable or otherwise.

### There was sufficient evidence to support the theory that Appellant killed H.L. by "overmedicating" her.

■ Appellant next argues the Commonwealth failed to produce evidence that he killed H.L. by "overmedicating" her. Appellant concedes that the evidence, viewed in a light most favorable to the Commonwealth, establishes that Appellant overmedicated H.L. However, Appellant claims that this did not cause her death. In support, Appellant points to the testimony of Dr. Rolf, who stated that the fatal injury was a blow to H.L.'s head.

■ It is true that, in order to find Appellant guilty of murder by overmedication, it was necessary for the jurors to disbelieve part of the testimony of Dr.

Rolf, whose opinion was unequivocal that death was caused by the subdural and subarachnoid hematomas resulting from the dual fractures to H.L.'s skull. However, this is entirely permissible as we have long stated that the jury may believe all of a witness's testimony, part of a witness's testimony, or none of it. *Gillispie v. Commonwealth*, 212 Ky. 472, 279 S.W. 671, 672 (1926). Testimony concerning the amount of promethazine and alprazolam in H.L.'s body at the time of her death was offered by both Dr. Rolf and Mike Ward, a toxicologist from the medical examiner's toxicology lab. According to Dr. Rolf, both drugs were in "very high concentrations" in H.L.'s blood. The toxicologist testified that, from the sample of blood taken from H.L.'s heart, there was approximately 1.2 mg/L of promethazine found, as well as 0.04 mg/L of alprazolam. Additionally, both Dr. Rolf and Ward testified that the drugs were at "toxic levels." Ward indicated that toxic levels arise when the effects of the drugs cause more harm than benefit. The amount of promethazine in H.L.'s system could lead to fluctuations in heart rate and blood pressure, profound sedation, a coma, and ultimately death. In addition, the amount of alprazolam could cause respiratory depression, a decrease in blood pressure, and profound sedation. While the presence of each drug alone may not necessarily cause death, according to Ward, the two acting in concert would "work strongly against [H.L.'s] chances of breathing" and would likely lead to respiratory depression. On top of this, Appellant admitted that he administered the medications to H.L.

On the basis of the evidence presented, we do not believe that it was clearly unrea-

1. Appellant states in his brief: "As the foregoing illustrates, when—or who, defendant or Amber [Robinson]—hit [H.L.] is anyone's guess. Defendant does not quibble with a complicity theory of criminal liability; the Commonwealth's evidence, viewed in its most favorable light, establishes that much."

sonable for the jury to find that Appellant killed H.L. by overmedicating her. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). Accordingly, we find that there was no unanimity violation, as the jury could have reasonably found Appellant guilty under either or both theories of cause of death.

In summary, we find there was evidence to support a conviction under either challenged theory proposed in the instruction. For the reasons set forth herein, the judgment of the Pike Circuit Court is hereby affirmed.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER and SCOTT, JJ., concur. VENTERS, J., concurs in result only.