**Douglas Wayne HALL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000244–MR.**

Supreme Court of Kentucky.

April 21, 2011.

Julia Karol Pearson, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court By Chief Justice MINTON.

Douglas Hall appeals as a matter of right [1] from a judgment convicting him of second-degree manslaughter, first-degree assault, first-degree burglary, and first-degree robbery and sentencing him to an aggregate term of forty-five years' imprisonment. He raises several issues on appeal.

Rejecting Hall's argument for a strict same-elements test for determining the appropriateness of instructing on lesser-included offenses, we approve the trial court's reliance on *Perry v. Commonwealth*[2] as authority for instructing the jury on first-degree assault as a lesser-included offense of attempted murder under the evidence presented in this case. But we reverse Hall's first-degree assault conviction because the trial court failed to instruct the jury on facilitation to assault, which the evidence also warranted. We affirm the remaining convictions and sentences imposed, and we remand for further proceedings in conformity with this opinion.

---

1. Ky. Const. § 110(2)(b).

2. 839 S.W.2d 268 (Ky.1992).

## I. FACTS.

This case arises out of a drug-related home burglary and robbery that ended in the violent death of one victim and the serious injury of another victim. Hall admits that he—along with others—planned the burglary and robbery to obtain money from one of the victims, but he contends that he did not intend for the victims to be killed or injured. Hall admits to being guilty of some involvement in robbing the victims; but he asserts that circumstances spiraled out of his control, resulting in unintended consequences for which he received—in his view—excessive convictions and punishment.[3] Contending that various errors occurred from the indictment stage through the penalty phase of trial, Hall argues that his convictions should be reversed and his case remanded for a new trial.

Hall and others—including Tony Hodge[4]—planned to rob Faye Jackson, knowing that she kept thousands of dollars on hand to pay for illegal drugs. Hall testified at trial to seeing Hodge with a gun before Hodge entered Jackson's home to rob her. At trial, Hall denied he gave Hodge the gun; but others testified Hall furnished the gun.

Hodge entered Jackson's home and immediately opened fire on the victims, Jackson and her boyfriend, Mitchell Turner. Hodge then stabbed both victims and left when he thought both victims were dead. Jackson died. Turner survived.

Hall was not directly involved in the shooting or stabbing. But he drove Hodge to Jackson's home and waited outside while Hodge went inside. According to their plan, Hodge agreed to signal Hall when it was time to enter Jackson's home and take Jackson's money. Hall, unlike Hodge, knew where Jackson kept her money from his previous trips to her house selling drugs.

Although he claimed to be shocked by the sound of gunshots, Hall admitted to entering the home upon Hodge's signal and taking the money from Jackson's purse. Hall claimed he tried to leave after seeing Jackson wounded. According to Hall, he remained in the Jackson home and further participated because Hodge threatened to kill him if he left.

Hall claims he was shaken by the incident; and he confided in his cousin, Travis Dixon, and in an acquaintance, Tim Shelton. Ultimately, it was Shelton who told police, resulting in Hall and others becoming suspects. Dixon and Shelton testified at trial to what Hall allegedly confided to them. There were significant inconsistencies among the various accounts, including a dispute in the testimony about whether Hall provided Hodge with the gun and whether Dixon or Hall threatened Shelton if he told police.

Hall was indicted for the wanton murder of Jackson, the attempted wanton murder of Turner, first-degree burglary, and first-degree robbery. Following the presentation of evidence at trial, the trial court instructed the jury on the charged offenses. Over Hall's objection, the trial court also instructed the jury on first-degree assault as a lesser-included offense of attempted murder and denied Hall's

---

3. According to Hall's brief, his "defense was that his downward spiral from drug addiction led to his planning a robbery that went horribly wrong."

4. According to Hall's brief, Hodge was indicted for the intentional murder of Margaret

"Faye" Jackson, the intentional attempted murder of Mitchell Turner, first-degree robbery, and first-degree burglary and pleaded guilty to all offenses in order to obtain a life sentence. The Commonwealth had sought the death penalty for both Hodge and Hall.

requests for instructions on facilitation to assault, first-degree robbery, and first-degree burglary.

At one point during deliberations, the jury informed the trial court that it was deadlocked. After the trial court gave the jury an *Allen* charge [5] and allowed the jury to review portions of a joint interview of Hall and Dixon by police, the jury eventually reached a verdict. The jury did not find Hall guilty of murder or of attempted murder. But it did find him guilty of second-degree manslaughter of Jackson, first-degree assault of Turner, first-degree robbery, and first-degree burglary.

The jury recommended Hall be sentenced to ten years' imprisonment for second-degree manslaughter, twenty years' imprisonment for first-degree assault, fifteen years' imprisonment for first-degree robbery, and fifteen years' imprisonment for first-degree burglary. The jury further recommended the two fifteen-year sentences for robbery and burglary be served concurrently. Finally, the jury recommended the ten-year and twenty-year sentences for manslaughter and assault be served consecutively. The total sentence was forty-five years' imprisonment. The trial court entered judgment in accordance with the jury's verdict and sentencing recommendation.

## II. ANALYSIS.

### A. Indictment Charging Attempted Wanton Murder was Harmless Error.

■ Hall contends he is entitled to relief because he was indicted for a crime that does not exist—attempted wanton murder—even though he was not convicted of that crime. We agree with Hall that a criminal charge requiring proof of attempting to achieve an unintended result is illogical,[6] but we do not believe he is entitled to relief under the facts of this case. Our belief is fortified by the fact Hall failed to raise this issue in the trial court.[7]

■ Clearly, a conviction for a non-existent crime cannot stand.[8] But there appears to be little or no authority concerning whether a defendant who fails to object to an indictment charging an illogical or non-existent crime is entitled to relief when the defendant is not convicted of that charge. Cases from other jurisdictions note that so long as certain indictment defects (such as citations to non-existent statutes or typographical er-

**5.** *See Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

**6.** *See Holland v. Commonwealth,* 114 S.W.3d 792, 795 n. 2 (Ky.2003) (in case in which defendant was alternatively charged with attempted intentional murder and attempted wanton murder; but trial court only instructed the jury on attempted intentional murder, holding that trial court properly ruled that attempted wanton murder is not an offense because "there is no such criminal offense as an attempt to achieve an unintended result."). *See also Prince v. Commonwealth,* 987 S.W.2d 324, 326 (Ky.App.1997) (trial court properly denied request for instruction on attempted first-degree manslaughter as lesser-included offense of charged crime of attempted murder

where there was no allegation of extreme emotional disturbance because this "would require an intention to commit an unintentional act.").

**7.** As noted by the Commonwealth, Kentucky law holds that a defendant waives defects in the indictment if he fails to present the issue to the trial court with certain exceptions, including that the indictment fails to charge an offense. *See* Kentucky Rules of Criminal Procedure (RCr) 8.18.

**8.** *United States v. Castano,* 543 F.3d 826, 836 (6th Cir.2008) (holding that conviction must be reversed because erroneous jury instructions created possibility that defendant was convicted of non-existent offense).

rors), which essentially result in charging a non-existent offense, do not actually mislead or prejudice a defendant, the defendant is not entitled to relief.[9] In the case before us, even though attempted murder is a recognized offense under Kentucky law, we recognize an indictment charging that a defendant·attempted to commit an unintentional murder can be described as illogical at best.

Nonetheless, even though the offense of attempted wanton murder is illogical—if not totally non-existent—we do not see how Hall was misled by the indictment. For example, he was free to argue he could not attempt to reach an unintentional result; and he does not now contend he was misled from being able to do so. And given the fact he was acquitted of this illogical charge and does not specifically allege how he was hampered in trying to defend himself because of this illogical charge, we do not believe he is entitled to reversal of his convictions for other offenses. The error does not arise to the level of palpable error.[10]

### B. No Error in Trial Court's Denying Request to Play Entire Joint Interview of Hall and Dixon Due to Hearsay Concerns.

■ Hall contends the trial court erred by not allowing him to play the entire recorded joint interview police conducted of him and his cousin, Travis Dixon.[11] Police conducted the joint interview after both Hall and Dixon became suspects and gave inconsistent statements to police.

Dixon's testimony concerned such matters as whether both Dixon and Hall were involved in selling drugs for Hall's Uncle Harold and Dixon's loaning money to Hall, allegedly giving rise to Hall's need to rob Jackson to pay Dixon. Hall apparently confessed his involvement in the robbery to Dixon, and Dixon believed that Hall provided to Hodge the gun used in the robbery. Overall, Dixon's testimony portrayed Hall in an unfavorable light, according to Hall.

The Commonwealth elected to play separate interviews of Hall and Dixon and asserts it declined to play the joint interview because of poor audio quality concerns. And from our examination of the record, the trial court allowed Hall to play portions of the joint interview to the jury and eventually even agreed to allow Hall to play the whole interview with the exception of a portion of the interview in which Hall and Dixon repeated what Hodge said, which is presumably excludable hearsay.[12] Hall does not specify what, if any, hearsay exception[13] might apply to the excluded portion of the interview.

Hall argues that he wanted to play the entire joint interview for the jury in order

---

9. *See, e.g., United States v. Chatham,* 677 F.2d 800, 803 (11th Cir.1982) (indictment charging defendant with offense by citing to superseded statute harmless error unless defendant misled or otherwise prejudiced); *State v. Carter,* 981 So.2d 734, 740–41 (La.App.2008) (indictment charging defendant with offense under erroneous statutory cite did not entitle him to relief where he was not misled to his prejudice.).

10. Kentucky Rules of Criminal Procedure (RCr) 10.26.

11. Although we find no error in the trial court's denial of Hall's request to play the entire joint interview, we acknowledge that the jury may have found the portions of the joint interview played at trial to be significant. After informing the trial court it was deadlocked at one point, the jury reached its verdict after being given an *Allen* charge and reviewing portions of the joint interview.

12. *See generally* Kentucky Rules of Evidence (KRE) 801, 802.

13. *See generally* KRE 803, 804.

to show that Dixon was the manipulator rather than Hall. But the jury was not directly charged with deciding whether Hall, Dixon, or anyone else was a manipulator. The jury's duty lay in determining whether Hall was or was not guilty of the charged offenses, none of which had as an element that the defendant was manipulative. So the question of who was the manipulator was of limited actual relevance.[14]

Given the limited relevance of Hall's asserted reason for playing the entire interview and the fact that Hall was allowed to play all non-hearsay portions of the joint interview and to cross-examine Dixon based on such portions, we find no abuse of discretion[15] in the trial court's denial of his request to play the entire joint interview.[16] And we do not believe the trial court's adherence to the rules of evidence, which disallowed the presentation of hearsay testimony about which no hearsay exception was ever asserted, deprived Hall of an opportunity fully to present his defense.[17]

## C. Prosecutor's Asking Hall Whether Other Witnesses Were Lying Did Not Amount to Palpable Error or Egregious Prosecutorial Misconduct Warranting Reversal.

██ On several occasions after pointing out the conflicting accounts from Hall and other witnesses, the prosecutor asked Hall whether the other witnesses were lying. Hall failed to object to these questions so this issue is unpreserved for our review.[18]

Specifically, these questions put to Hall by the prosecutor about other witnesses lying arose in two main instances. The first instance happened when Hall testified that Dixon sold drugs for Harold Hall, which was contrary to Dixon's testimonial denial of selling drugs. The second instance happened when the prosecutor asked Hall about a trip Hall made to Texas with Shelton. During that trip, Hall allegedly confessed to Shelton his involvement in the robbery and told Shelton that he gave Hodge the gun.

We support the wisdom of our precedent that disapproves of the practice of asking a witness whether another witness is lying.[19]

**14.** *See* KRE 401 (defining *relevant evidence* as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

**15.** *See generally Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 720 (Ky.2009) (trial court's decision to admit or exclude evidence is subject to abuse of discretion standard of review).

**16.** *See* KRE 402 ("Evidence which is not relevant is not admissible."); KRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").

**17.** *See Crane v. Kentucky*, 476 U.S. 683, 691, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (re-

versing conviction as defendant had been deprived of his right to present his complete defense by trial court's not allowing defendant to present *any* evidence about the environment in which he gave his confession to cast doubt on the voluntariness of his confession). Here, Hall was not completely deprived of an opportunity to suggest that Dixon was a manipulator or less than credible, nor was he unable to present any evidence of the substance of the joint interview—rather, he was simply required to abide by the rules of evidence concerning hearsay in presenting evidence of this joint interview.

**18.** KRE 103(a)(1).

**19.** *See, e.g., Moss v. Commonwealth*, 949 S.W.2d 579, 583 (Ky.1997) ("A witness should not be required to characterize the testimony of another witness ... as lying.").

But no palpable error arose here. And these instances did not constitute prosecutorial misconduct rising to the level of reversible error.[20]

Even if the questions of who was lying not been asked, jurors would almost certainly wonder who was lying because the conflicting accounts presented. Jurors were forced to determine which witnesses to believe in the course of deciding whether the prosecution proved beyond a reasonable doubt that Hall was guilty of the charged offenses. And while the fact that the jury ultimately convicted Hall of some of the charged offenses suggests jurors may have found some other witnesses' accounts more credible than Hall's, any such finding likely stemmed in large part from the conflicting accounts that Hall himself gave rather than stemming primarily from the prosecutor's questions about whether other witnesses were lying. For example, Hall initially gave one recorded statement to police and then gave another statement in which he claimed to have lied in the first statement on matters as basic as the purpose for his and Hodge's trip to Jackson's home. And on at least one occasion during his testimony, Hall testified inconsistently with a statement he provided police and claimed he lied during his statement

to police. Hall is not entitled to relief on this ground.

### D. Trial Court Properly Instructed Jury on First Degree Assault as Lesser–Included Offense of Attempted Murder Under Facts of this Case.

▪■ The trial court instructed the jury on first-degree assault and second-degree assault, which it viewed under the facts of this case as lesser-included offenses of the charged offense of attempted murder. The trial court relied on *Perry v. Commonwealth*[21] as authority for viewing first-degree assault as a lesser-included offense of attempted murder.

Hall objected to instructing the jury on first-degree assault, but he consented to instructing the jury on second-degree assault.[22] He argued first-degree assault was not a lesser-included offense of attempted murder. He also claimed that *Perry* was inapplicable to the facts of his case because his co-defendant principal, Hodge, clearly intended to kill both victims. In *Perry*, there was evidence the defendant, who shot both victims, intended only to injure one victim.[23]

---

**20.** *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky.2006) (stating that reversal because of prosecutorial misconduct is only warranted where misconduct is so prejudicial and egregious as to cast doubt on basic fairness of trial).

**21.** 839 S.W.2d 268.

**22.** The second-degree assault instruction, like the first-degree assault instruction, also required certain findings not required by the attempted murder instruction, such as serious physical injury inflicted by use of a gun or dangerous instrument.

Although we do not fully understand the reasoning behind Hall's accepting a second-degree assault instruction but objecting to a first-degree assault instruction, we note that

defense counsel argued to the trial court that the second-degree assault instruction was proper because it "tracked" the language of the attempted murder instruction and the levels of lesser-included homicide (or attempted homicide) offenses. The Commonwealth argued that the first-degree assault instruction also properly tracked the language of the attempted murder instruction and the different levels of homicide. Defense counsel did not specifically respond to the Commonwealth's argument but steadfastly maintained that a first-degree assault instruction should not be given.

**23.** *See Perry*, 839 S.W.2d at 270 (recounting how defendant shot both victims but told one victim, "I'll let you live this time.") *See also id.* at 273 (inferring from jury's verdicts that

Despite his general objection to a first-degree assault instruction and argument that *Perry* was not applicable, Hall did not specifically argue at trial that a first-degree assault instruction should not be given because it required particular statutory elements beyond those required for finding attempted murder. He did not specifically claim at trial he was deprived of notice that he would be required to defend against charges containing elements not contained in any charged offense. He did not then articulate an argument that the fact-based approach used to determine lesser-included offenses in *Perry* should be abandoned in favor of a "strict statutory elements" approach for determining lesser-included offenses.

Hall did argue in his motion for new trial that he "was not given notice in the indictment or otherwise that he would have to defend against a charge that included serious physical injury as a necessary element." He also argued in his new-trial motion that *Perry*'s rejection of a "strict statutory elements" approach for determining lesser-included offense instruction issues was no longer good law in light of *Holland v. Commonwealth*.[24]

### 1. *Perry Facts and Significant Holdings.*

In *Perry*, the Commonwealth cross-appealed from the trial court's granting the defendant a new trial on the basis the jury was improperly instructed on and convicted the defendant of first-degree assault,

although he was not indicted for this offense.[25] The defendant was indicted for attempted murder. He argued he was improperly convicted under the first-degree assault instruction for an offense that included "elements of a distinct criminal offense from that for which the appellant had been indicted...."[26]

We characterized Perry's argument as calling for a "strict statutory elements" approach for determining whether to instruct on another offense as a lesser-included offense of a charged offense. Such a "strict statutory elements" approach calls for looking at the elements of crimes as set forth by statute rather than looking at the facts set out in the indictment or the evidence presented at trial.[27] We declined to adopt a "strict statutory elements" approach, finding it to be an "inherently inflexible" standard embraced by only a minority of courts.[28]

We seemingly acknowledged in *Perry* that first-degree assault would not be a lesser-included offense of attempted murder under a strict statutory elements approach. We noted: "Assault in the first degree requires a state of mind, an act and a result, 'serious' physical injury. Attempted murder requires only a state of mind and an act, but does not require any injury."[29] So the statute defining first-degree assault requires finding at least one element—serious physical injury—not required by the statute defining attempted murder. But we concluded the trial court

---

defendant intended to kill one victim but only to injure other victim).

24. *See* 114 S.W.3d at 801 n. 6.

25. 839 S.W.2d at 271.

26. *Id.* at 272, *quoting Morris v. Commonwealth*, 783 S.W.2d 889, 890 (Ky.App.1990).

27. *Perry*, 839 S.W.2d at 272. ("His argument would require this Court to follow a strict statutory 'elements' approach. This approach looks to the elements of the main and lesser crimes as set out by the applicable statutes, rather than to look to the charge or the evidence.").

28. *Id.*

29. *Id.* at 273.

properly instructed on first-degree assault as a lesser-included offense of attempted murder under the facts of that case.

We noted determinations of whether one offense could properly be characterized as a lesser-included offense of another offense are governed by Kentucky Revised Statutes (KRS) 505.020(2), which provides:

> A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:
>
> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
>
> (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or
>
> (d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property[,] or public interest suffices to establish its commission.

And we determined under the facts of that case first-degree assault could qualify as a lesser-included offense under KRS 505.020(2)(a), which provides that a crime qualifies as a lesser-included offense if "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged...." [30]

Essentially, first-degree assault was established by proof of the same or less than all the facts required to establish attempt-ed murder in *Perry* because serious physical injury was not at issue. Because Perry shot the victim, causing serious physical injury but not death, the jury could convict Perry of attempted murder if the jury believed he intended to kill the victim. But it could convict Perry of first-degree assault if the jury believed he intended only to injure the victim. We noted that Perry did not dispute that "serious physical injury" did occur because of the victim's being shot and that Perry's causing "serious physical injury" would satisfy the "substantial step" element of attempted murder. [31]

Employing a fact-based approach rather than a strict statutory elements approach, "[t]he only element in this case which separated a conviction for attempted murder from first-degree assault was the mental state of Perry at the time of the incidents." [32] And we concluded that the jury properly determined from the evidence that Perry only intended to injure the victim, whom he was convicted of assaulting in the first degree, "in contrast to their decision that he indeed intended to kill" another victim, whom Perry was convicted of attempting to murder. [33] So we determined in *Perry* that the trial court properly instructed the jury on first-degree assault and reversed the trial court's order granting a new trial on the assault conviction.

## 2. *Perry is Still Good Law.*

Hall contends this Court noted in *Holland v. Commonwealth* that other jurisdictions have held that first-degree assault is not a lesser-included offense of attempted murder. Hall argues that *Perry*'s holding

---

30. *id.* at 272.

31. *Id.* at 273.

32. *Id.*

33. *Id.*

to the contrary[34] is no longer good law in light of our comments in *Holland*.[35] But we agree with the Commonwealth that we acknowledged other jurisdictions' holdings that assault is not a lesser-included offense in dictum in *Holland*. In *Holland*, we were not directly faced with a question of whether an assault instruction could be given as a lesser-included offense of attempted murder.[36]

Despite our dictum in *Holland* suggesting that perhaps *Perry* ought to be re-examined in light of our embracing a "same elements" test for determining whether an offense is a lesser-included offense for double jeopardy purposes in *Commonwealth v. Burge*, we have not overruled *Perry*. *Perry* has continued to be cited in court cases and secondary sources for the specific proposition that first-degree assault can sometimes be a lesser-included offense of attempted murder.[37] And it is cited for the more general proposition that a strict statutory elements approach should not be utilized to determine if a trial court should instruct a jury on an unindicted offense as a lesser-included offense of a charged offense. *Perry* is cited as authority for allowing instructions on uncharged offenses where the facts alleged in the indictment or the evidence presented at trial supported such instructions.[38]

**34.** *See Perry*, 839 S.W.2d at 273. ("First-degree assault can be an included offense of attempted murder if the missing element which prevents the murder from being consummated is not a necessary element of first degree assault.... If the jury believes that the defendant intended to kill the victim, he can be convicted of attempted murder. If on the other hand, they believe that he did not intend death but only intended to injure the victim, he could be convicted of first-degree assault.").

**35.** Hall cites *Holland*, 114 S.W.3d at 801 n. 6, in which this Court noted that *Perry* was rendered before this Court returned to the double jeopardy "same element" analysis of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in *Commonwealth v. Burge*, 947 S.W.2d 805, 809–11 (Ky.1996); noted that this Court had "not had an opportunity since *Burge* to reconsider whether an [a]ssault offense can be a lesser-included offense to [a]ttempted [m]urder" under the *Blockburger* test but that other jurisdictions held that assault crimes were not lesser-included offenses of attempted homicides; and noted that this Court distinguished between Kentucky Revised Statutes (KRS) 507 homicide offenses (requiring death of victim) and KRS 508 assault offenses (requiring physical injury) and found an instruction on fourth-degree assault as a lesser-included offense of murder to be improper in *Commonwealth v. Hager*, 41 S.W.3d 828 (2001).

**36.** In *Holland*, we noted that the defendant had been indicted for attempted murder, 114 S.W.3d at 795, and that the trial court had instructed the jury on both attempted murder and on first-degree assault as a lesser-included offense of attempted murder. *Id.* at 801. The defendant was convicted of attempted murder (rather than assault), *id.* at 801–02, and did not claim that the trial court erroneously instructed on assault on appeal to this Court.

**37.** *See Phillips v. Commonwealth*, 2005–CA–001151–MR, 2007 WL 1207122 at *4 (Ky. App. April 20, 2007) ("to the extent Phillips is arguing that an instruction for first-degree assault as a lesser-included offense of attempted murder was error, we disagree. *See Perry v. Commonwealth*, 839 S.W.2d 268, 272–73 (Ky.1992).").

**38.** *See Commonwealth v. Day*, 983 S.W.2d 505, 509 (Ky.1999) ("A lesser included offense is one which includes the same or fewer elements than the primary offense. KRS 505.020(2)(a); *Wombles v. Commonwealth*, [831 S.W.2d 172, 175 (Ky.1992)]. This does not require a strict 'statutory elements approach,' so long as the lesser offense is established by proof of the same or less than all of the facts required to establish the commission of the charged offense. *Perry v. Commonwealth* [839 S.W.2d 268, 272 (Ky.1992)]."). *Accord, Bailey v. Commonwealth*, 2008–CA–001108–MR, 2009 WL 2633507 at *2 (Ky. App. Aug. 28, 2009), *citing Perry* and *Day*.

See also WILLIAM S. COOPER & DONALD P. CETRULO, *KENTUCKY INSTRUCTIONS TO JURIES*

### 3. We Decline to Adopt Strict Statutory Elements Approach and Retain Fact–Based Approach Embraced in Perry.

We are aware of arguments that a *Blockburger*-type strict statutory elements approach should govern questions of which offenses a trial court may properly instruct the jury on as lesser-included offenses of charged offenses.[39] But we decline to adopt such a strict statutory elements approach here, especially in light of Hall's failure clearly to advocate such an approach until after the trial was over.

We acknowledge a strict statutory elements approach to deciding lesser-included instruction issues might seem more consistent with our use of that same approach to determining lesser-included offenses for

purposes of double jeopardy. We also recognize a strict statutory elements approach might appear to offer more certainty and judicial economy.

But a strict statutory elements approach has its own disadvantages.[40] Most importantly, that approach may deprive a defendant of an opportunity for a desired lesser-included offense instruction because of differences in statutory elements even where the defendant is willing to concede that additional elements of uncharged offenses are not really at issue in the case. So we decline to adopt a strict statutory elements approach to determining whether a trial court can properly instruct a jury on an uncharged offense as a lesser-included offense of a charged offense:

§ 1.05 (5th ed.2006), *citing Perry*, 839 S.W.2d at 272.

**39.** *See Gill v. Commonwealth*, No. 2009–CA–001884–MR, 2011 WL 345808 at *2 (Ky.App. Feb. 4, 2011) (in upholding trial court decision not to instruct on lesser included offense, stating: "We recognize that the Supreme Court has never explicitly overruled *Perry* and has not had an opportunity since *Burge* to reconsider whether an assault offense can be a lesser-included offense to attempted murder. *See Holland v. Commonwealth*, 114 S.W.3d 792, 801 n. 6 (Ky.2003). Furthermore, the *Burge/Blockburger* test applies to determine whether a charge is a lesser-included offense for double jeopardy purposes. However, we conclude that the same elements test of *Burge* and *Blockburger* is relevant to determine whether a lesser-included offense instruction is required. ... a lesser included offense is one which is established by proof of the same or less than all the facts required to establish the commission of the offense charged. KRS 505.020(2)(a). [I]f the lesser offense requires proof of a fact not required to prove the greater offense, then the lesser offense is not included in the greater offense, but is simply a separate, uncharged offense.") (internal quotation marks omitted).
 *See also* Wayne R. LaFave and Jerold H. Israel, Criminal Procedure § 24.8(e) (Defining the lesser-included offense) (2010),

*quoting Schmuck v. United States*, 489 U.S. 705, 720–21, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (noting that approach focusing on statutory elements of crimes rather than facts of individual case in determining whether jury should be instructed on another offense as lesser-included offense of charged offense "permits both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly ... [and] promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference.") (We note that *Schmuck* considered which approach was appropriate for determining jury instructions in federal courts under the Federal Rules of Criminal Procedure and, thus, has no application to determining which approach governs Kentucky state courts following Kentucky statutes and court rules).

**40.** *See* LaFave & Israel § 24.8(e) (noting that strict statutory elements approach "has been criticized as too mechanical and inflexible" and "[o]ften it excludes lesser offenses that reflect the true criminal nature of the committed conduct and that clearly are within the framework of the transaction as recognized by all of the parties.").

### 4. First–Degree Assault Can Be Lesser–Included Offense of Attempted Murder Depending on Facts of Particular Case.

■ Having chosen to retain the fact-based approach embraced by *Perry* rather than adopt the strict statutory elements approach to determine what uncharged offenses a trial court may properly instruct a jury on as lesser-included offenses of charged offenses, we find no reason to disturb *Perry*'s holding that first-degree assault *can be* a lesser-included offense of attempted murder depending upon the facts of a particular case.

### 5. Despite Charged Offense of Attempted Murder Not Requiring Element of Serious Physical Injury, Facts Set Forth in Indictment Provided Hall with Notice that Victim May Have Suffered Serious Physical Injury.

Although the indictment did not charge Hall with first-degree assault or otherwise explicitly inform Hall he would have to defend against a charge that included serious physical injury as a necessary element, the indictment did specify that Hall had wantonly engaged in conduct resulting in Hodge shooting and stabbing Mitchell. And, as a matter of common sense, most defendants notified they are charged with engaging in conduct resulting in a victim being both shot and stabbed surely suspect

the victim was seriously physically injured. So Hall's post-trial claims of surprise at having to defend against allegations of serious physical injury seem suspect on a common-sense level. And we believe that the trial court properly applied *Perry* to allow an instruction on first-degree assault as a lesser-included offense of attempted murder despite the fact that the statutory offense of first-degree assault can require certain elements (such as serious physical injury) not required by the statutory offense of attempted murder.[41]

### 6. Perry Supports First–Degree Assault Instruction Under Facts of this Case.

*Perry* holds that where the victim's suffering a serious physical injury is not really at issue, a first-degree assault instruction can be given as a lesser-included offense when the defendant's intent (to kill or to injure) determines whether he or she is guilty of first-degree assault or attempted murder.[42] And we believe this holding applies to warrant a first-degree assault instruction in this case, despite some obvious factual differences between this case and *Perry*.

*Perry* is somewhat different in that *Perry* was charged with attempted intentional murder and convicted of first-degree assault as a principal, whereas Hall was charged with attempted wanton murder as a complicitor. Despite this factual differ-

---

**41.** Although we conclude that Hall had adequate notice that Turner may have suffered serious injury, we express no opinion on whether there was sufficient evidence of serious physical injury to support Hall's first-degree assault conviction (which we reverse on other grounds in part II.E. of this opinion).

**42.** *Perry*, 839 S.W.2d at 273. ("The circumstances in this case warranted an instruction on first-degree assault as an alternative verdict to attempted murder. The trial court properly included the instruction since Perry did not dispute that 'serious physical injury'

resulted from the gunshot wound to Hayden. The only element in this case that separated a conviction for attempted murder from first degree assault was the mental state of Perry at the time of the incidents. The decision then to convict Perry of attempted murder or first-degree assault turned on whether the jury believed that the Commonwealth had presented sufficient evidence of Perry's mental state at the time of the incident. That is, did Perry actually intend to kill Hayden, or did he merely intend the consummated act of first-degree assault?")

ence, *Perry* still applies to allow a first-degree assault instruction in this case. The additional elements required by first-degree assault over attempted murder under the facts here (serious physical injury and use of a gun or dangerous instrument) were not really at issue. Instead, the pivotal issue here was whether there was intent to kill or merely injure Turner.[43] So the trial court properly followed *Perry* and allowed an instruction for first-degree assault as a lesser-included offense of attempted murder under the facts of this case.

### E. Trial Court Erred in Refusing to Instruct on Facilitation to Assault.

■■ Although the trial court properly instructed the jury on first-degree assault under a complicity theory[44] as a lesser-included offense of attempted murder, we reverse Hall's first-degree assault conviction because the trial court erred in refusing to instruct the jury on facilitation to assault as a lesser-included offense of complicity to assault despite the existence of evidence to support such an instruction.

While Hall objected to a first-degree assault instruction, he requested that a facilitation to assault instruction be given if the trial court instructed the jury on first-degree assault. Defense counsel did not actually tender a facilitation instruction. But Hall's counsel argued that evidence Hall drove Hodge to the victim's home and provided the gun to Hodge[45] but did not intend that anyone be hurt was sufficient evidence to support a facilitation instruction.[46]

The trial court declined to give a facilitation to assault instruction, stating it was not warranted under the facts and the statute (KRS 506.080(1)) defining facilitation as follows:

A person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime.

The trial court offered Hall's denial of knowledge that Hodge would assault the victim as one reason why it refused to

---

**43.** The trial court's instruction on attempted murder is somewhat unclear as to whether the jury had to find that **Hall** somehow intended for Turner to be killed or whether it was enough for **Hodge** to have that intent. The attempted murder instruction, unlike the first-degree assault instruction, required a finding that Hodge attempted to kill Turner. It also required a finding that Hall "under circumstances manifesting an extreme indifference to human life, was wantonly engaging in conduct, which created a grave risk of death to Mitchell Turner, and which resulted in Tony Clayton Hodge shooting and/or stabbing Mitchell Turner with intent to cause his death."

**44.** We note that despite Hall's insistence that he should receive a facilitation to assault instruction (and his overall objection to the trial court instructing the jury on first-degree assault as a lesser-included offense to attempted

murder), he does not claim that the trial court incorrectly instructed the jury on assault by complicity.

**45.** Although Hall denied giving Hodge the gun in his testimony, other witnesses testified that Hall gave Hodge the gun.

**46.** Although tendered instructions may aid the trial court and appellate courts in determining whether a particular instruction is warranted, one is not required to tender an instruction to preserve an argument about whether to instruct the jury on a particular matter; more precisely, objecting to the trial court's denial of one's request for an instruction on that matter is sufficient to preserve the issue for review so long as one states "specifically the matter to which the party objects and the ground or grounds of the objection." RCr 9.54(2).

instruct on facilitation to assault. But the trial court also more generally suggested that it was denying the instruction based on the facilitation statute and the testimony, stated that it had been unable to craft a facilitation to assault instruction that fit the proof presented, and asked whether defense counsel had prepared a facilitation instruction to tender. Although perhaps the trial court focused on Hall's denial of knowledge that Hodge intended to assault Turner as negating the required mental state for facilitation, the trial court may have also had concerns about whether the evidence showed that Hall provided the means and opportunity for Hodge to commit the assault and, thus, could satisfy the forbidden-act requirement of facilitation.

The Commonwealth argues the trial court properly denied a facilitation instruction because in Hall's trial testimony, (1) he denied knowing of Hodge's intent to assault anyone and (2) he denied providing the gun to Hodge. The Commonwealth cites *Smith v. Commonwealth*[47] as authority for the proposition that a facilitation instruction should be denied when the defendant denies knowledge of the principal co-defendant's intent to commit the crime.[48] But we distinguished *Smith* as a case with a lack of sufficient evidence to support facilitation in *Chumbler v. Commonwealth.*[49] We indicated in *Chumbler* that even where a defendant denied knowl-

edge of a principal co-defendant's intent to commit the crime, the defendant may be entitled to a facilitation instruction where the jury could infer the defendant's knowledge from the defendant's conduct.[50]

Despite Hall's denials of knowing of his co-defendant's intent and of providing a gun to his co-defendant, there was evidence to support an instruction on facilitation to assault. A jury was not obligated to accept Hall's denial of knowledge of Hodge's intent to assault or his denial of providing the gun to Hodge.[51] In the alternative, a jury could infer Hall's knowledge of Hodge's intent to assault from Hall's admitted knowledge Hodge possessed a gun when entering the premises to rob Jackson. And a jury could believe other witnesses' testimony that Hall provided Hodge with the gun [52] and could also consider the fact Hall admittedly drove Hodge to the scene of the crime to conclude that he provided a means or opportunity for Hodge to commit the assault without intending to promote the assault. So there was evidence that would support instructing the jury on facilitation to assault.

It is possible a reasonable jury could find Hall not guilty of assault by complicity and, yet, find beyond a reasonable doubt that Hall was guilty of facilitation to assault; so an instruction on facilitation as a lesser-included offense of complicity to assault was warranted.[53] The jury could in-

---

47. 722 S.W.2d 892 (Ky.1987).

48. *See id.* at 896–97 (holding that facilitation to murder instruction not warranted despite defendant's claims that his leaving gun in alleged murderer's sight was providing a means and opportunity to commit murder because defendant never claimed to know of murderer's intentions).

49. 905 S.W.2d 488, 498 (Ky.1995).

50. *Id.* at 499.

51. *See generally Robinson v. Commonwealth,* 325 S.W.3d 368, 371 (Ky.2010) ("the jury may believe all of a witness's testimony, part of a witness's · testimony, or none of it.").

52. *See id.* ("Deciding whose version to believe and weighing witness credibility is entirely within the jury's discretion.").

53. *See Thompkins v. Commonwealth,* 54 S.W.3d 147, 151 (Ky.2001) ("An instruction on a lesser-included offense is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the

fer that Hall knew Hodge would commit assault because Hall knew Hodge took a gun into the residence to commit the robbery and find Hall provided a means or opportunity for Hodge to commit assault by driving him to the residence or providing a gun, even if a jury did not find all the requisite elements of complicity to assault.[54] Although we sympathize with the trial court's difficulty in ruling upon the request for a facilitation instruction without the benefit of a tendered facilitation instruction to clarify how the evidence might show that the requisite elements of facilitation are fulfilled, we conclude that the trial court erred in denying Hall's request for an instruction on facilitation to assault.

### F. Trial Court Properly Denied Request for Instructions on Facilitation to Robbery and Burglary.

■ We have concluded the trial court erred in refusing to instruct the jury on facilitation to assault, but we further conclude the trial court properly denied Hall's requests for instructions on facilitation to robbery and facilitation to burglary.

■ A defendant is not entitled to an instruction not supported by the evidence.[55] And, as the trial court noted, the evidence was that Hall clearly took an active role in planning and carrying out the robbery and burglary, including going into the home and taking money. There was no evidence he merely facilitated the burglary and robbery.

■ We explained in Monroe v. Commonwealth[36] the difference between complicity and facilitation: "a complicitor must be an instigator, or otherwise invested in the crime, while a facilitator need only be a knowing, cooperative bystander with no stake in the crime."[57] Here, Hall admitted to being an instigator, who planned with others to burglarize and rob Jackson, with a clear vested interest in the crimes—the desire to obtain money to meet his drug-related and other expenses. And there was no evidence presented indicating he was merely a bystander who knew Hodge would rob and burglarize the victims but was indifferent as to whether the crime would be committed and had no stake in the crime.[58] To the contrary, the uncontradicted evidence showed Hall took an active role in planning and carrying out the burglary and robbery; consequently, he was not entitled to an instruction on

---

defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense.").

54. The requisite elements of complicity to assault as instructed by the trial court included: (1) that Hodge shot or stabbed Turner; (2) that Hall "solicited, counseled, commanded[,] or engaged in a conspiracy with" Hodge to rob Jackson; and (3) that in so doing, Hall wantonly engaged in conduct "which created a grave risk of death" to Turner and caused serious physical injury "by use of [a] gun or dangerous instrument under circumstances manifesting an extreme indifference to human life."

55. Dixon v. Commonwealth, 263 S.W.3d 583, 586 (Ky.2008) (instruction on lesser-included

offense such as facilitation is only warranted if supported by the evidence).

56. 244 S.W.3d 69 (Ky.2008).

57. Id. at 75.

58. See White v. Commonwealth, 178 S.W.3d 470, 490–91 (Ky.2005) (upholding denial of facilitation instruction as "[t]he evidence presented at trial supported only two theories: that Appellant was an active participant in planning the crime and intended that it be carried out, or that he was an innocent bystander who happened to be present when some of the instruments used in the crime were acquired. There was no evidence of a middle-ground violation of the facilitation statute.").

facilitation to robbery and burglary.[59] So the trial court did not err in refusing to instruct the jury on facilitation to robbery and facilitation to burglary.

### G. Prosecutor's Asking Jury to Send Message to Hall in Closing Argument of Guilt Phase Did Not Create Palpable Error or Constitute Egregious Prosecutorial Misconduct Warranting Reversal Under Facts of this Case.

Hall contends the prosecutor made an improper "send a message" argument to the jury in closing argument in the guilt phase of the trial, although he admits he did not preserve the issue through objection.[60] We expressed disapproval of "send a message" arguments in the guilt phase of trial in *Cantrell v. Commonwealth*,[61] even though we recognize that certain "send a message" arguments may be legitimate in penalty-phase closing arguments where such arguments are narrowly focused on deterrence objectives and do not attempt to bring community pressure to bear on the jury.[62] But even "send a message" arguments in the guilt phase of trial do not always constitute palpable error.[63]

From our review of the record, it appears that the prosecutor asked the jury to send a message to Hall—not to the community—about what a local jury would tolerate in the community. To the extent that the prosecutor made an improper "send a message" argument, it did not appear to be an egregious one. And because the prosecutor did not clearly insinuate that the jurors would be subjected to scorn from their community if they did not convict Hall or urge the jury to convict Hall for reasons other than the evidence and reasonable inferences from the evidence, Hall is not entitled to relief.[64]

To the extent the argument may have been improper, we do not believe it amounted to reversible prosecutorial misconduct because the argument does not appear to have been so "improper, prejudicial[,] and egregious as to have undermined the overall fairness of the proceed-

---

**59.** *Dixon,* 263 S.W.3d at 587 (defendant not entitled to instruction on facilitation to robbery where evidence indicated he took an active role in robbery, and there was no evidence that he was "wholly indifferent" to whether crime was actually committed.").

**60.** Hall quotes the prosecutor in his brief as having told the jury in oral argument: "You've got to decide what kind of behavior that you're going to tolerate in your community.... You do what you should do as a Madison County resident, which is tell that guy what you're going to tolerate. All these people out here are going to sit by and watch you do it." From our review of the record, this quote seems substantially correct although possibly a word or two may have been different from what the prosecutor actually said.

**61.** 288 S.W.3d 291, 299 (Ky.2009).

**62.** *Id.*

**63.** *See Commonwealth v. Mitchell,* 165 S.W.3d 129, 132 (Ky.2005) (prosecutor's guiltphase closing argument containing a "send a message" argument was not palpable error, especially as this argument was made in direct response to pleas for leniency in defense guiltphase closing argument but stating "we again caution the Commonwealth that it is not at liberty to place upon the jury the burden of doing what is necessary to protect the community.").

**64.** *See Farmer v. Commonwealth,* No. 2009–SC–000423–MR, 2010 WL 3722786 at *6 (Ky. Sept. 23, 2010) (holding that argument to send a message to defendant, not community, did not amount to palpable error because the argument did not attempt to coerce the jury to convict through community pressure or urge jury to convict based on reasons other than the evidence and reasonable inferences from the evidence).

ings." [65]

## H. No Palpable Error Arose from References to Recidivism Rates in Penalty Phase.

 Although admitting the issue is unpreserved, Hall contends palpable error arose because the prosecutor improperly asked a witness during the penalty phase about national parole recidivism rates.[66]

Hall called a jail official to testify that Hall was very well behaved at the jail; he seemed remorseful; and, in the jail official's judgment, Hall could be rehabilitated. The prosecutor objected, stating the jail official was not qualified to give opinions on whether someone could be rehabilitated. The trial court allowed Hall to ask the jail official about his qualifications to express such an opinion. The jail official then acknowledged he was not qualified to state whether someone could be rehabilitated, but he was qualified to testify about whether Hall would likely re-offend. The jail official stated Hall "did not strike" him as someone who would re-offend if given proper support in the form of treatment for drug addiction.

The prosecutor then asked the jail official on cross-examination if he held himself out as an expert on whether someone released on parole would re-offend and asked him if he knew the national statistics for parolees re-offending. The official testi-

fied he did not know such national parole statistics but stated that around 82 percent of inmates in the local jail would return; however, he believed that Hall would be in the 18 percent who did not return to the jail if Hall received help.

Any error in the discussion of recidivism rates here did not amount to palpable error because the witness did not actually discuss recidivism rates of people released on parole. The witness admitted not knowing the national statistics. Although he volunteered the fact that a large majority of local jail inmates returned to his jail, the tenor of his testimony was that he believed Hall would be unlikely to get into trouble again if he got help for substance abuse. In short, we do not find this inquiry into recidivism rates resulting in a law enforcement officer testifying favorably about Hall's chances of staying out of trouble affected his substantial rights or resulted in a manifest injustice. There was no palpable error [67] and no reason to reverse on this ground.

## I. Trial Court Properly Denied Motions for New Trial.

 "We review the trial court's denial of [an] Appellant's new trial motion for abuse of discretion." [68] We discern no such abuse of discretion here upon the specific allegations raised in Hall's motion for new trial, which we discuss in turn.

---

65. See Brewer, 206 S.W.3d at 349.

66. Hall cites Young v. Commonwealth, 129 S.W.3d 343, 344–45 (Ky.2004), in which we held that presenting general statistical evidence about how often parole is granted during sentencing hearings was improper as support for his argument that inquiry into national recidivism rates of parolees was also improper. Obviously Young presents a slightly different inquiry; and while its logic may seem somewhat applicable to the inquiry

here, there was, nonetheless, no palpable error here from the questions asked or responses given as discussed in text.

67. RCr 10.26.

68. Brown v. Commonwealth, 174 S.W.3d 421, 428 (Ky.2005) (reviewing denial of motion for new trial based on allegations of juror misconduct under abuse of discretion standard of review).

### 1. No Reversible Error from Trial Court's Refusal to Conduct More Evidentiary Hearings on Allegations of Juror Misconduct Raised Post–Trial or from Denial of New Trial Motion.

Hall alleges the trial court did not sufficiently investigate post-trial allegations of juror misconduct. He filed original and amended motions for a new trial, which were based partly on post-trial allegations a juror told other jurors during deliberations that she had an uncle who was severely punished for killing a man in a bar fight, she believed Hall should receive at least as severe a punishment, and she had researched penalties on the internet.

Hall attached to his motion for a new trial an affidavit by a juror (# 40) who had made the allegations about another juror (# 215). Hall also claimed that Juror # 215 had failed to reveal her uncle's criminal history on her jury qualification form, which asked whether anyone in a prospective juror's family had a criminal history, and during voir dire questioning.

The trial court conducted a hearing on the issue and questioned Juror # 215 about the allegations. Juror # 215 denied making such statements and said she only used the internet for making vacation reservations.

The trial court denied this first motion for a new trial. The trial court observed that jury qualification forms are not sworn statements and further found any failure to note an uncle's criminal history on such a form was not an intentional act because the term *family* was not defined on the form. The trial court also reviewed the record of the voir dire and found that prospective jurors were not questioned about criminal history of family members. Lastly, the trial court found that Juror # 215 denied conducting any internet research during trial and further noted defense counsel notified prospective jurors about the penalty range for charged and lesser-included offenses during voir dire. The trial court concluded that Hall "has not established improper outside influence upon the jury." The trial court noted that following the hearing involving Juror # 215, the court was notified Hall mistakenly identified Juror # 215 and that some other unidentified juror made the statements.

Hall then filed a second motion for a new trial, claiming that he misidentified the allegedly tainted juror and requested another Juror (# 256) be called in for questioning. The trial court declined to do so in a written order denying the second motion for a new trial. The trial court explained the sworn affidavit of Juror # 40 specifically identified Juror # 215 as the juror who allegedly conducted internet research and noted it was notified that the wrong juror had been called after its questioning of Juror # 215. And it found that the information provided by Hall in the second motion for a new trial was insufficient to justify holding another hearing because there was no indication that Juror # 256 had "discussed any outside information with the jury panel which in any way [a]ffected their decision," and Juror # 40's affidavit indicated that "her" (apparently referring to juror who allegedly conducted internet research) "opinion was not persuasive with the jury." Then, citing RCr 10.04, the trial court stated it would not allow jurors to be called as witnesses against each other.

RCr 10.04 states that "[a] juror cannot be examined to establish a ground for new trial, except to establish that the verdict was made by lot." So even the trial court's initial questioning of Juror # 215 is not expressly permitted by our rules. And having questioned Juror # 215 about the allegations, we do not believe that the trial

court was obligated to question Juror # 256 in the same manner or to grant Hall a new trial based upon the allegations made in one juror's unsupported affidavit.

In a similar unpublished case, we affirmed a trial court's denial of a motion for a new trial where a sole juror alleged juror misconduct in an uncorroborated affidavit and held that this one juror's unsupported allegations were insufficient evidence to prove juror misconduct.[69]

The trial court did not abuse its discretion in denying the motion for a new trial, and the trial court properly refused to conduct further proceedings to question jurors about alleged juror misconduct that was not brought to the trial court's attention until after the trial.

### 2. No Reversible Error in Trial Court's Refusal to Investigate Further Post–Trial into Allegations that Dixon Watched Trial and Denial of New Trial on this Basis.

Hall contends the trial court erroneously denied his motions for a new trial and did not conduct a sufficient investigation on allegations Dixon watched trial proceedings on closed circuit television during trial. During the middle of trial, Hall alleged Dixon watched Hall's trial on closed circuit television from jail and contended this was a violation of KRE 615 (requiring separation of witnesses upon request).

The trial court questioned Dixon about the allegations. Dixon claimed to watch only portions of Hall's and Sue Hall's testimony, and the trial court noted Hall and Sue Hall testified after Dixon. The trial court also found Dixon's watching the trial rendered little apparent effect on Dixon's

testimony, which was consistent with an earlier statement Dixon made to police. But the trial court allowed Dixon to be cross-examined and impeached by defense counsel concerning his watching the trial.

Following trial, Hall filed a motion for a new trial in which he alleged Dixon actually watched much longer portions of the trial and provided a supporting affidavit to that effect from a defense law clerk who further investigated allegations of Dixon watching the trial. Apparently, other inmates and jail personnel said they saw Dixon watching the trial on days other than those Dixon admitted in his earlier testimony. Hall claims Dixon watched Shelton's testimony and conformed his testimony to Shelton's, although he does not allege specifically how Dixon's testimony conformed to Shelton's. The trial court denied the motion for a new trial and refused to conduct additional hearings on this issue.

In its written order denying the first motion for a new trial, the trial court explained its reasoning for denying a new trial or other relief upon the allegations that Dixon watched additional testimony in jail:

> With the additional information presented by the Defendant in the Motion for New Trial, the Court must examine the importance of Mr. Dixon's testimony and the effect of what he might have heard on his testimony. [Hatfield v. Commonwealth, 250 S.W.3d 590, 594 (Ky.2008)]. During the course of the investigation, Mr. Dixon was interviewed by Detective Chris Short with the Kentucky State Police. His testimony at trial remained consistent with the prior statement[,] and the defense had ample opportunity to cross examine him on the

69. *Woodall v. Commonwealth*, No. 2004–SC–0931–MR, 2005 WL 2674989 at *3 (Ky. October ber 20, 2005).

first day he testified and when they recalled him on the fourth day of trial. While his testimony was not favorable to the Defendant, it was more cumulative in nature.

If Mr. Dixon was watching the trial at the time stated by Officer Nicholson (2/24/09 at 11:00 a.m.), he would have heard Detective Short describe the crime scene and would have observed the crime scene video. This information would have little effect, if any, on his testimony. Officer Nicholson's statement is consistent with that of Travis Dixon regarding the portion of the trial viewed. The concern during trial was that Mr. Dixon heard the testimony of Tim Shelton. Mr. Dixon was specifically questioned regarding this matter and denied hearing the testimony. Additionally, the defense had opportunity to cross-examine and impeach Mr. Dixon after learning that he watched a portion of the trial.

As we explained in *Woodard v. Commonwealth,*[70] the rule requiring separation of witnesses on request, KRE 615, applies to what happens in the courtroom, although the spirit of the rule is violated "when witnesses coordinate their testimony" outside the courtroom.[71] But where witnesses allegedly engaged in collusion outside the courtroom, we stated all the trial court could do was question the witnesses and allow the witnesses' testimony to be "subject to proper impeachment on cross-examination." Noting the trial court followed this best course, we found no abuse of discretion.[72]

Similarly, here, the trial court questioned Dixon about his watching portions of the trial at the jail and allowed him to be cross-examined by defense counsel about watching portions of the trial at the jail. We discern no abuse of discretion. Furthermore, we note that Dixon told the trial court he heard only Hall's and Sue Hall's testimony so it did not believe his watching these portions of the trial had any effect on his testimony especially because the trial court believed that Dixon's testimony was consistent with a prior statement he gave police. As for later allegations that Dixon watched more testimony than he admitted to the trial court, even assuming such allegations were true, Hall fails specifically to allege how Dixon's testimony was actually affected by other witnesses' testimony. Although he generically asserts that Dixon tailored his testimony to Shelton's testimony, he does not specifically allege how Dixon's testimony followed Shelton's testimony.

The trial court did not abuse its discretion in denying Hall's motion for a new trial on the ground that Dixon violated the rule on separation of witnesses[73] or in denying further hearings on this issue.

## J. Hall is Not Entitled to Further Relief for Alleged Cumulative Error.

Although we reverse Hall's first-degree assault conviction due to the trial court's erroneously refusing to instruct the jury on facilitation to assault, Hall is not entitled to any further relief for other alleged errors as he "received a fundamentally fair trial with any [other] errors being so mi-

---

**70.** 219 S.W.3d 723 (Ky.2007), *abrogated on other grounds by Commonwealth v. Prater,* 324 S.W.3d 393 (Ky.2010).

**71.** *Id.* at 728–29.

**72.** *Id.*

**73.** *See Capshaw v. Commonwealth,* 253 S.W.3d 557, 562, 567 (Ky.App.2007) (reviewing denial of motion for new trial based partly on allegations of violation of rule on separation of witnesses under abuse of discretion standard of review).

nor that even their cumulative effect does not demand reversal." [74]

## III. CONCLUSION.

For the foregoing reasons, we reverse Hall's conviction for first-degree assault, affirm all other convictions, and remand for further proceedings in conformity with this opinion.

All sitting. ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur. SCHRODER, J., concurs, in part, and dissents, in part, by separate opinion.

SCHRODER, J., concurring, in part, and dissenting, in part:

I concur on the manslaughter, burglary, and robbery convictions. However, as to the first-degree assault conviction, I dissent on grounds that the indictment failed to state an offense. RCr 8.18. Hall was only instructed on first-degree assault as a lesser-included offense of attempted wanton murder, which the majority opinion essentially concedes is a non-existent offense. A defendant cannot be convicted of a lesser-included offense of a non-existent crime. *See Nease v. State,* 592 S.W.2d 327, 332 (Tenn.Crim.App.1979) from our sister state. Although the specific argument was not raised below, failure to charge an offense can be raised by the court at anytime, RCr 8.18, and would constitute palpable error.

---

**74.** *Roach v. Commonwealth,* 313 S.W.3d 101, 113 (Ky.2010) (affirming trial court judgment despite allegations of cumulative error because "Roach received a fundamentally fair trial with any errors being so minor that even their cumulative effect does not demand reversal.").