# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  MARCH 25, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2019-SC-0253-MR

BRETT CARROLL          APPELLANT

|  |  |
|---|---|
| V. | ON APPEAL FROM WARREN CIRCUIT COURT<br>HONORABLE JOHN GRISE, JUDGE<br>NO. 15-CR-00518 |

COMMONWEALTH OF KENTUCKY          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Warren Circuit Court jury convicted Appellant Brett Carroll of first-degree manslaughter, two counts of tampering with physical evidence, and of being a second-degree persistent felony offender (PFO).  Carroll was sentenced to thirty-five years' imprisonment and now appeals to this Court as a matter of right.  Ky. Const. § 110(2)(b).  On appeal, Carroll argues that the trial court committed palpable error by failing to grant his motion for a directed verdict of acquittal on all charges. After review, we affirm the trial court.

### FACTUAL BACKGROUND

On September 7, 2014, an officer with the Bowling Green Police Department discovered Shawn Yonko's body in his apartment while performing a welfare check. Due to extensive decomposition, Yonko's cause of death was not readily ascertainable. An autopsy by the Kentucky Medical Examiner's

office determined that Yonko died from a stab wound to the chest that punctured his heart. Based on the volume of blood in the chest cavity, the medical examiner determined Yonko bled to death shortly after being stabbed but concluded the wound would not have caused Yonko to be immediately immobilized. The medical examiner believed Yonko died 3 to 7 days before his body was found.

The police investigation determined Yonko was last seen alive by a friend on the evening of August 31, 2014, and that the last outgoing call from Yonko's cell phone occurred at 8:23 p.m. that same night. Detective Buss, the lead homicide detective on the case, turned his investigative attention to Yonko's neighbor, Chrystal Wright, after learning she and two men—Robert Wright and Appellant, Brett Carroll—had been stopped by another officer on the night of August 31 for driving with a cracked windshield.

Detective Buss first spoke to Robert Wright. He told Buss he had spent time at Chrystal's apartment on August 31 with Chrystal, Carroll, and another woman, Tabitha Robinson, but claimed his girlfriend picked him up that evening and drove him to Louisville. Buss also contacted Tabitha. Tabitha made statements to Buss indicating that Robert and Carroll had been involved in a fight with Yonko. During his investigation, Buss also received a tip from the mother of Robert's girlfriend that Carroll and Robert may have been involved in a crime.

2

Armed with this information, Detective Buss confronted Chrystal. Although she initially denied having any information about Yonko's death, she relented and gave police a recorded statement. Chrystal told police that she, Robert, Carroll, and Tabitha spent the evening of August 31, 2014, drinking at her apartment. At some time during the evening, Carroll went outside to use the phone. When he came back inside, he told the others he had "just got into it outside" with another man. Chrystal stated that Robert, who had been drinking and was intoxicated, went outside to confront the person with whom Carroll had an altercation and that she and Carroll followed him.

Outside of the apartment, Crystal observed Robert arguing with her neighbor Yonko. The altercation between the two men turned physical and Carroll got involved. Chrystal saw Carroll run toward Yonko and hit him in the chest. Once Carroll hit Yonko in the chest, the fight ended. Chrystal heard Yonko make a remark about getting his "heat," which she understood to mean his gun, and saw him walk back into his apartment. Chrystal said the group quickly left in her car after the fight, and Carroll instructed her to drive to his mother's house. Once there, the group went into Carroll's bedroom. In the bedroom, Chrystal said Carroll told the group he had stabbed Yonko and that Carroll and Robert changed out of the clothes they were wearing. Carroll took the clothes outside, and Chrystal overheard his mother ask him why he was starting a fire. Chrystal said Carroll threatened to kill the others if they told anyone he had stabbed Yonko.

After obtaining Chrystal's statement, Detective Buss again spoke to Robert, who decided to cooperate with the investigation and provided a statement. Robert admitted his girlfriend had not taken him to Louisville as he initially told Buss and gave a statement corroborating much of Chrystal's account of the evening of August 31. Thereafter, Carroll was indicted for murder, two counts of tampering with physical evidence, and with being a second-degree PFO.

At trial, Chrystal, Tabitha, and Robert all testified for the Commonwealth. Chrystal's trial testimony was mostly consistent with her prior statements to police. Tabitha testified she saw Carroll with a bloody knife in Chrystal's car after the group fled the apartment. She also said she observed Carroll throw something out of Chrystal's car window. She assumed it was the knife because she did not see Carroll with the knife after that. While the group was at Carroll's mother's house, Tabitha overheard Carroll say he planned to burn the clothes he and Robert had been wearing on August 31. Robert testified Carroll admitted to the others in Chrystal's car to stabbing Yonko. He also saw Carroll throw a knife out of Chrystal's car window. Robert stated Carroll gave him clothes to change into at his mother's house, so Carroll could burn the clothes they had worn during the fight.

Carroll's sister Lindsey also testified at his trial. Lindsey claimed she could not recollect Carroll coming to their mother's house on August 31, 2014, but the Commonwealth impeached her testimony with a previous statement she gave to police. In that statement, Lindsey said she remembered a night

4

when she was watching movies at her mother's house and that Carroll, a "Rob guy," and "a black girl and some white girl" came in "trashed." Lindsey said the group went straight to Carroll's bedroom when they arrived but emerged later and burned something.

Carroll's defense was to cast Robert—not Carroll—as the likely culprit for Yonko's death and painted the Commonwealth's proof as a "contrived story by three felons." Although defense counsel elicited concessions that called the credibility of Chrystal, Robert, and Tabitha's testimony into question, the jury disagreed with Carroll's alternative-perpetrator theory and found him guilty of first-degree manslaughter,[1] two counts of tampering with physical evidence (one count for throwing the knife out of Chrystal's car and one count for burning the clothes), and of being a second-degree PFO. The trial judge sentenced Carroll to thirty-five years' imprisonment in accordance with the jury's recommendation.

## ANALYSIS

Carroll's sole argument on appeal is that the trial court erred in denying his motion for directed verdict of acquittal on the charges of first-degree manslaughter and tampering with physical evidence. As an initial matter, Carroll concedes that he did not properly preserve this issue for appeal because he failed to renew his motions at the close of evidence in compliance with CR[2]

---

[1] Although Carroll was indicted for murder, the trial court also instructed the jury on first-degree manslaughter, a lesser-included offense.

[2] Kentucky Rule of Civil Procedure.

5

50.01. Consequently, we review the trial court's denial of Carroll's motions for palpable error under RCr[3] 10.26. "Palpable error affects the substantial rights of the party and results in manifest injustice. Furthermore, an appellant claiming palpable error review must show that the error was more likely than ordinary error to have affected the jury." *Boyd v. Commonwealth*, 439 S.W.3d 126, 129-30 (Ky. 2014). A party claiming palpable error must show a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

A trial court considers a motion for directed verdict under the standard set out in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991), which holds:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserve[] to the jury questions as to the credibility and weight to be given to such testimony.

*Id.* at 187. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

Under KRS 507.030(1)(a), "[a] person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another

---

[3] Kentucky Rule of Criminal Procedure.

person, he causes the death of such person or of a third person." Although Carroll argues that the Commonwealth did not present substantial evidence that he killed Yonko, we disagree.

"A defendant's guilt may be established by circumstantial evidence and any inferences that may justifiably be drawn therefrom." *David v. Commonwealth*, 795 S.W.2d 942, 947 (Ky. 1990). While it is true that the exact time of Yonko's death is not known, the medical examiner estimated his death fell within a range of days that was circumstantially consistent with other evidence presented by the Commonwealth that supported that Yonko likely died on the evening of August 31 as a result of being stabbed by Carroll. Police investigation found that Yonko last used his cell phone the night of August 31, the same night he was last seen alive by a friend. Witnesses for the Commonwealth testified that Carroll was involved in a fight with Yonko on the night of August 31, hit Yonko in the chest, and later confessed to stabbing Yonko. Witnesses observed Carroll with a bloody knife after the fight. All trial testimony was consistent with the medical examiner's conclusion that Yonko bled to death after being stabbed in the chest. There was sufficient evidence to convince a reasonable juror that Carroll acted with intent to cause serious physical injury to Yonko and, did in fact, cause his death. KRS 507.030(1)(a).

Similarly, Carroll was not entitled to a directed verdict on the charges of tampering with physical evidence. KRS 524.100(1)(a) states in relevant part:

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

7

(a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding;
. . .

At Carroll's trial, Tabitha and Robert testified that they saw Carroll with a knife following the altercation with Yonko and that he threw the knife out of Chrystal's vehicle after leaving the scene. Chrystal, Tabitha, and Robert all provided testimony that Carroll burned the clothes he and Robert wore during the fight. The Commonwealth elicited testimony from Carroll's sister that Carroll burned "something" at their mother's house the night of the fight with Yonko. The Commonwealth presented more than sufficient evidence for a jury to conclude that Carroll was guilty of tampering with physical evidence.

Carroll's argument that the trial court's failure to grant his directed verdict motion constituted palpable error because the Commonwealth's case was built upon testimony of unreliable witnesses is belied by black letter Kentucky law. The Court has long held that "matters of credibility and of the weight to be given to a witness's testimony are solely within the province of the jury." *Minter v. Commonwealth*, 415 S.W.3d 614, 618 (Ky. 2013). Carroll was afforded the opportunity to fully cross-examine the witnesses who testified that he stabbed Yonko, disposed of the knife, and burned the clothes he was wearing. He does not claim that he was prohibited in any way from attacking their credibility by pointing out to the jury that they were felons who had lied previously to police. It was the province of the jury to decide whether those witnesses were telling the truth.

8

Finally, though there may have been some conflicting evidence at trial pertaining to the tampering charges, that in and of itself does not require reversal. Some witnesses testified that Carroll had a knife, and some did not see one. Some witnesses saw blood on the knife, and some did not. There were eyewitnesses to Carroll starting a fire, while others merely overheard him say he was going to start a fire. Again, Carroll had ample opportunity to cross-examine the witnesses and highlight for the jury that there were inconsistencies in their testimony. As noted above, the weight and credibility to assign to a witness's testimony is exclusively within the jury's province. *Id.* A juror may believe all or any part or none of the testimony of any of the witnesses *Robinson v. Commonwealth,* 325 S. W. 3d 368, 271 (Ky 2010).

In ruling on Carroll's directed verdict motion, the trial court was required to construe conflicting evidence in the light most favorable to the Commonwealth. *Benham*, 816 S.W.2d at 187. The amount and character of evidence presented in this case was more than sufficient for the Commonwealth's case to survive a motion for directed verdict, even had that motion been properly preserved. Carroll was not denied due process, and it was not unreasonable for the jury to conclude Carroll committed all of the offenses for which he was charged. Accordingly, the trial court did not err in denying Carroll's motion for directed verdict of acquittal on all charges.

## CONCLUSION

For the foregoing reasons, we affirm the Warren Circuit Court.

All sitting.  All Concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Robert Lee Baldridge
Assistant Attorney General