RENDERED:  OCTOBER 1, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0798-MR

DWIGHT TAYLOR                                           APPELLANT


v.
                        APPEAL FROM JEFFERSON CIRCUIT COURT
                        HONORABLE A.C. MCKAY CHAUVIN, JUDGE
                        ACTION NOS. 19-CR-000768 AND 20-CR-000236


COMMONWEALTH OF KENTUCKY                                 APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Dwight Taylor ("Appellant") appeals from a judgment

of the Jefferson Circuit Court reflecting a jury verdict of guilty on one count of

wanton endangerment in the first degree[1] (19-CR-000768), and with being a

---

[1] Kentucky Revised Statutes ("KRS") 508.060.

persistent felony offender in the first degree[2] (20-CR-000236). Appellant argues that the circuit court erred in allowing the jury to see a photograph of the victim that was not properly entered into evidence; that the court erred in failing to give a second-degree wanton endangerment instruction as a lesser-included offense of first-degree wanton endangerment; and that the court erred in failing to strike a juror for cause. For the reasons addressed below, we find no error and affirm the judgment on appeal.

## FACTS AND PROCEDURAL HISTORY

On February 16, 2019, at approximately 4:30 a.m., A.P. and her friend, Quenishia Hatchett (a/k/a/ "Dora"), drove to the STR8 Ryderz night club on Dixie Highway in Louisville, Kentucky. While seated at the bar, A.P. was approached by Appellant. He introduced himself as "700," and A.P. said her name was "London." Appellant and A.P. consumed alcohol, talked for a while, and the conversation eventually turned to the topic of sex. Based on their conversation, Appellant believed A.P. to be interested in having sex with him after the bar closed.

A.P. was intoxicated, having consumed alcohol both before and after arriving at the club. She laid her head on the bar and told Dora that she was ready to leave. Dora, who was with her then-boyfriend, was not ready to leave.

---

[2] KRS 532.080(3).

Appellant offered to give A.P. a ride home, but Dora thought A.P. should not get in the car with Appellant. Ultimately, Dora drove A.P. and Appellant to A.P.'s residence. Dora's boyfriend, Will Queen, drove a separate vehicle to A.P.'s residence.

Dora dropped off A.P. and Appellant at A.P.'s residence, and then left with Mr. Queen. A.P. would later testify that after Appellant used the bathroom, he approached her from behind, grabbed her by the neck, strangled her, and pushed her onto the bed. A.P. stated that Appellant continued to strangle her on the bed for twenty minutes, that she lost and regained consciousness several times, and that Appellant raped her.

In contrast, Appellant stated that after he came out of the bathroom, A.P. was naked on the bed and acting in a way that made him think she was ready for sex. He stated that he did not have sex with A.P. because he could not achieve an erection. He testified that he passed out on the bed, woke up some time later, and was naked. He said he checked his body to see if he had had sex, determined that he had not, and got dressed.

When both parties were awake, Appellant told A.P. that he was married. He said that this upset her, that she told him he should not have come with her, and that she threw something at him as he tried to leave. According to Appellant, A.P. then demanded $200, approached him in a physically aggressive

manner, and swung her fist at him. Appellant stated that he very briefly put his hands on her throat to push her back, forced her on the bed, told her that she was "trippin,'" and that he did not owe her any money. Appellant then left A.P.'s residence and walked home.

A.P. went to the hospital later that morning and told the medical personnel that she had been raped. The hospital transferred her to the Center for Women and Families for a sexual assault nurse examination. Sexual assault nurse examiner ("SANE") Amanda Corzine examined A.P., and took several photographs. Twenty-eight photographs were later entered into evidence.

Louisville Metro Police Department Detective Lyndsey Lynch, who was assigned to the Special Victims Unit, investigated A.P.'s claims. Detective Lynch spoke with A.P. on several occasions, and went to A.P.'s residence to take photographs. Detective Lynch determined that the man that A.P. knew only as "700" was Appellant. At A.P.'s residence, Detective Lynch observed a man's black t-shirt. She did not take the shirt as evidence, as it was not clear that it was related to the alleged crime. Sometime later, however, A.P. gave the shirt to Detective Lynch and told her that Appellant had been wearing it at her residence.

The matter proceeded before a Jefferson County grand jury, which returned an indictment charging Appellant with one count each of rape in the first degree, wanton endangerment in the first degree, assault in the fourth degree, and

-4-

with being a persistent felony offender in the first degree. The matter proceeded to trial, resulting in a jury verdict finding Appellant guilty of the wanton endangerment in the first degree and persistent felony offender charges. He received a sentence of five years in prison on the wanton endangerment conviction, enhanced to seventeen years by virtue of the persistent felony offender status. This appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant, through counsel, first argues that the Jefferson Circuit Court committed reversible error in allowing the Commonwealth to utilize at trial a photograph of A.P. taken by SANE nurse Amanda Corzine that was not properly entered into evidence. Appellant also argues that the court improperly allowed the jury to view this photograph while it deliberated. During the course of Nurse Corzine's examination of A.P., Nurse Corzine took several photographs of A.P. documenting her injuries. Twenty-eight photographs were entered into evidence. Another photograph, characterized in the record as "the general orientation photograph of A.P.," was used by the Commonwealth during its questioning of Nurse Corzine at trial. Nurse Corzine described the photograph as "our general orientation photograph" that is taken "to show how the patient presented at the

time of the exam."[3] Appellant now objects to the Commonwealth's usage of this photograph at trial, as it was not given an exhibit number and was not introduced into the evidence. Appellant also argues that the circuit court erred in allowing the jury to view this photograph during its deliberations. Finally, Appellant maintains that the court's error was not harmless because he was ultimately convicted of wanton endangerment.

When Appellant raised this objection at trial, Judge Chauvin examined the record and determined that the photograph at issue was properly placed into evidence, but must have been improperly tallied and recorded. We have no basis for contradicting this conclusion. *Arguendo*, even if the photograph was not properly admitted into evidence, any error arising therefrom would be harmless. The general orientation photograph merely shows A.P., fully clothed, from several feet away. In contrast, the twenty-eight other photographs entered into evidence and considered by the jury were close-up photographs of A.P.'s injuries, including multiple scrape marks on her throat and hemorrhaging in the sclera, or "whites," of her eyes.

> No error in either the admission or the exclusion of
> evidence and no error or defect in any ruling or order, or
> in anything done or omitted by the court or by any of the
> parties, is ground for granting a new trial or for setting

---

[3] The general orientation photograph shows A.P.'s entire, clothed body from a distance of several feet. The additional photographs are close-ups of A.P.'s throat, eyes, ears, mouth, etc., which Nurse Corzine testified showed injuries consistent with strangulation.

aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

Kentucky Rules of Criminal Procedure ("RCr") 9.24. "The test for harmlessness is whether the error substantially swayed the verdict." *Allen v. Commonwealth*, 395 S.W.3d 451, 467 (Ky. 2013) (citation omitted). Given the innocuous nature of the photograph in question, especially in light of the twenty-eight other photographs, many of which showed clear injuries, we would find any error on this issue harmless even if the photograph were not properly entered into evidence.

The question then becomes whether Judge Chauvin properly allowed the jury to consider this photograph during its deliberation. We must answer this question in the affirmative. "Upon retiring for deliberation the jury may take all papers and other things received as evidence in the case." RCr 9.72. Judge Chauvin expressly found that the general orientation photograph was properly entered into evidence; therefore, the jury was allowed to consider it during its deliberation. We find no error.

Appellant next argues that the circuit court erred in failing to instruct the jury on the lesser-included offense of second-degree wanton endangerment.[4]

---

[4] KRS 508.070.

He notes that while A.P. alleged that Appellant strangled her for twenty minutes, Appellant, in contrast, said that he grabbed her by the neck very briefly to defend himself. While asserting that the circuit court is bound to include an instruction on any lesser-included offense supported by the record, Appellant states that first-degree wanton endangerment includes the element of "aggravated wantonness" or an extreme indifference to the value of human life, whereas second-degree wanton endangerment requires proof of only a substantial danger of physical injury. Appellant argues that the record supported an instruction on second-degree wanton endangerment, and the court's failure to include the instruction constitutes reversible error.

A lesser-included instruction "is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Hudson v. Commonwealth*, 385 S.W.3d 411, 416 (Ky. 2012) (internal quotation marks and citation omitted). The trial court must determine "whether the evidence would permit a reasonable juror to make the finding the instruction authorizes." *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013). The Jefferson Circuit Court determined that the evidence did not support the instruction, and on appeal we review this decision for abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). "The

test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "Because such decisions are necessarily based upon the evidence presented at the trial, the trial judge's superior view of that evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard." *Sargent*, 467 S.W.3d at 203 (footnote omitted).

The question for our consideration is whether the circuit court abused its discretion in concluding that the evidence did not warrant an instruction on the lesser-included offense of second-degree wanton endangerment. Having closely examined the record and the law, we must answer this question in the negative. Whereas the Commonwealth produced evidence in support of first-degree wanton endangerment which included the testimony of A.P. and Nurse Corzine, as well as photographic evidence of A.P.'s injuries, the sole evidence in support of a second-degree wanton endangerment instruction was Appellant's own testimony.[5] When granting the circuit court a "measure of deference," *id.*, because of the trial judge's

---

[5] Pursuant to KRS 508.060(1), a person is guilty of wanton endangerment in the first degree "when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.070(1) states that a person is guilty of wanton endangerment in the second degree "when he wantonly engages in conduct which creates a substantial danger of physical injury to another person."

superior view of the evidence, and as the sole evidence in support of the lesser-included instruction is Appellant's own testimony, we find no abuse of discretion and affirm the circuit court on this issue.

Appellant's final argument is that the Jefferson Circuit Court erred in failing to dismiss Juror 2455306 for cause during *voir dire*. During questioning of the jury panel, the court asked the entire jury panel if there was anything that any of them should disclose. Juror 2455306 stated that she was acquainted with counsel for the Commonwealth. When the court asked Juror 2455306 if this would make her for or against counsel, an unidentified voice said, "it's for, it's for." Upon further questioning, Juror 2455306 stated that her acquaintance with counsel did not bias her, and that if the Commonwealth failed to prove its case she would find Appellant not guilty. She also stated that if she found Appellant not guilty, she would not feel that she had to apologize to the Commonwealth's counsel. Juror 2455306 stated that she was acquainted with the prosecutor for five or seven years, but that it did not bias her and that she could be fair and impartial.

Appellant argues that despite what Juror 2455306 stated, there are grounds to believe that her relationship with the prosecutor would have prevented her from being impartial. He argues that the circuit court's failure to remove Juror 2455306 is not harmless error, as Appellant had to use a peremptory strike to remove Juror 2455306 which could have been used on a different juror. This, he

argues, may have affected the outcome of the proceeding. Based on this alleged error, Appellant argues that the judgment should be reversed.

"A trial court's decision on whether to strike a juror for cause is reviewed for abuse of discretion." *Ward v. Commonwealth*, 587 S.W.3d 312, 328 (Ky. 2019) (footnote and citation omitted). And as noted above, abuse of discretion may be found only where the trial court acts arbitrarily, unreasonably, or unfairly, or takes action unsupported by sound legal principles. *English*, *supra*. Thus, the question before us is whether the Jefferson Circuit Court acted arbitrarily, unreasonably, or unfairly, or took an action unsupported by sound legal principles. We conclude that the circuit court did not so act, and therefore did not abuse its discretion. While acknowledging that she is acquainted with the prosecutor, Juror 2455306 unequivocally stated that she would act in an impartial manner and would not vote to convict Appellant unless the Commonwealth proved the elements of the offenses. The circuit court's decision to accept the veracity of Juror 2455306's statement falls squarely within its authority to exercise discretion, and does not constitute an abuse of discretion. We find no error.

## CONCLUSION

The general orientation photograph was properly admitted into the evidence and considered by the jury. In addition, Appellant was not entitled to an instruction on the lesser-included offense of second-degree wanton endangerment.

Finally, the circuit court did not err in failing to strike Juror 2455306 for cause. We find no error. Accordingly, we affirm the judgment of the Jefferson Circuit Court.

DIXON, JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS IN PART AND FILES SEPARATE OPINION.

CALDWELL, JUDGE: I agree with the well-reasoned majority Opinion regarding each argument on appeal except that I must respectfully dissent as to affirming the failure of the trial court to include, in the jury instructions, an instruction on the lesser-included offense of second-degree wanton endangerment.

I do not dispute the reasoning of the majority in finding that the trial court's decision should be reviewed under the abuse of discretion standard. Nor do I disagree that it is the duty of the trial court to determine that the evidence presented would permit a reasonable juror to make the finding authorized by the instruction. *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013).

However, it is important not to mistake sufficiency of the evidence with its credibility. While the trial court determines whether there is sufficient evidence to include a lesser-included offense in jury instructions, it is the privilege and responsibility of the jury to determine who is to be believed and what is credible. "Deciding whose version to believe and weighing witness credibility is

-12-

entirely within the jury's discretion." *Hall v. Commonwealth*, 337 S.W.3d 595, 610 n.52 (Ky. 2011) (quoting *Robinson v. Commonwealth*, 325 S.W.3d 368, 371 (Ky. 2010)).

It is the well-established law in Kentucky that a trial court must instruct the jury on the facts in evidence presented and that each party is entitled to an instruction based on his theory of the case if there is evidence to sustain it. *Roberts v. Commonwealth*, 599 S.W.3d 841, 854 (Ky. 2020); *Beard v. Commonwealth*, 581 S.W.3d 537, 541 (Ky. 2019) (quoting *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015)).

Further, "In a criminal case it is the duty of the court to prepare and give instructions on the whole law and this rule requires instructions applicable to every state of case deducible or supported to any extent by the testimony." *Kelly v. Commonwealth*, 267 S.W.2d 536, 539 (Ky. 1954) (citations omitted). When considering whether a lesser-included instruction is warranted, the evidence must be construed in favor of the party seeking instruction. *Allen v. Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011).

In the case at hand, Appellant's testimony, if he is believed, would support a jury instruction for the lesser-included offense of second degree wanton endangerment. Whether or not he is to be believed, however, is a decision for the jury, not one for this Court or the trial judge.

-13-

BRIEF FOR APPELLANT:

Joshua M. Reho
Leo G. Smith
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky