RENDERED: MARCH 23, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0483-DG

DWIGHT TAYLOR                                         APPELLANT


V.                    ON REVIEW FROM COURT OF APPEALS
NO. 2020-CA-0798
JEFFERSON CIRCUIT COURT
NOS. 19-CR-000768 & 20-CR-000236


COMMONWEALTH OF KENTUCKY                      APPELLEE


**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING AND REMANDING</u>**

This case comes before the Court for review from the Court of Appeals' unpublished decision affirming Appellant Dwight Taylor's convictions for first-degree wanton endangerment and first-degree persistent felony offender. He was sentenced to seventeen years in prison. The Court of Appeals' decision affirmed, finding no reversible error when the trial court allowed the jury to view a photograph of the victim improperly admitted into evidence, in failing to instruct the jury on the lesser-included offense of second-degree wanton endangerment, and in refusing to strike a juror for cause. Taylor sought discretionary review before this Court solely on the issue of the failure to instruct the jury on second-degree wanton endangerment, which we granted.

For the following reasons, we reverse the Court of Appeals and remand to the Jefferson Circuit Court.

## I.    Facts and Procedural Posture

Much of the facts and procedural history below is not relevant to the charge of first-degree wanton endangerment. Thus, we restrict our account only to those facts necessary to a correct determination on the issue before us.

The night of February 16, 2019, Taylor and A.P.[1] were drinking at the STR8 Ryderz nightclub in Louisville. The two encountered one another and began to drink together. From their conversation, Taylor understood A.P. to be interested in sex after leaving the club. A.P.'s friend drove her and Taylor to A.P.'s house and dropped the two of them off. Inside the house, Taylor went to use the restroom and the story diverges from here.

A.P. testified that Taylor came out of the restroom and approached her from behind, grabbing the back of her neck and strangling her, while also pushing her onto the bed. She proceeded to fight him, facing him, at which point Taylor grabbed her neck with both hands. She testified that for approximately twenty minutes Taylor kept at least one hand on her neck, strangling her, causing her to go in and out of consciousness several times. She claimed to have been raped but the jury acquitted Taylor on that charge. A.P. stated by the end of the attack she was unconscious but was roused by hearing her door slam. She walked to her window and saw Taylor leaving.

---

[1] Initials are used to protect the victim's identity.

A.P. went to the hospital later that morning and saw a sexual assault nurse examiner. The nurse examiner testified to a multitude of injuries, including petechiae,[2] erythema (bruising), abrasions, and swelling on A.P.'s face, neck, ears, mouth, chest, shoulder, forearms, and eyes. Dozens of photographs were submitted into evidence regarding these injuries. The nurse examiner testified several of these injuries, especially on the neck and eyes, were consistent with strangulation.

Taylor testified in his own defense and offered a quite different account of the night in question. He testified to leaving the bathroom and finding A.P. naked on her bed. He took this to be an invitation for sex. He stated, however, that he could not achieve an erection and, while trying to focus, "just kind of like pass[ed] out." Taylor then testified to waking up naked beside an also naked A.P. He checked his body to determine if he had had sex and concluded he had not. He then proceeded to get dressed and leave. While doing so, A.P. woke up and the two apparently began to converse, at which point Taylor mentioned he was married. According to Taylor, this upset A.P. enough that the two began to argue and that she even threw an item at him. She also demanded that Taylor pay her $200. Taylor testified at this point she approached him and swung at him, but did not make contact. He then admitted, "I did put my hands around her neck, willful. Applied a grip but it didn't last long. I just wanted to back her up and let her know that she needed to stop dealing with me like that." He denied strangling her but did admit he

---

[2] Small spots on the skin caused by hemorrhage to blood capillaries.

grabbed her neck for a second or two. After grabbing her neck and throwing her down on the bed, Taylor testified to leaving the house and walking home.

At trial, Taylor requested and tendered a second-degree wanton endangerment instruction as a lesser-included offense. The trial court denied it. On appeal, the Court of Appeals split 2-1 on this issue. Judge Larry Thompson, writing for the majority, concluded,

> The question for our consideration is whether the circuit court abused its discretion in concluding that the evidence did not warrant an instruction on the lesser-included offense of second-degree wanton endangerment. Having closely examined the record and the law, we must answer this question in the negative. Whereas the Commonwealth produced evidence in support of first-degree wanton endangerment which included the testimony of A.P. and Nurse Corzine, as well as photographic evidence of A.P.'s injuries, the sole evidence in support of a second-degree wanton endangerment instruction was Appellant's own testimony. When granting the circuit court a "measure of deference," . . . because of the trial judge's superior view of the evidence, and as the sole evidence in support of the lesser-included instruction is Appellant's own testimony, we find no abuse of discretion and affirm the circuit court on this issue.

(internal footnote and citation omitted). Judge Caldwell dissented. She believed the trial court and Court of Appeals had applied a credibility determination as to Taylor's account rather than an objective consideration of whether his account, if believed, was sufficient to support a determination of guilt for second degree wanton endangerment. She concluded, "In the case at hand, Appellant's testimony, if he is believed, would support a jury instruction for the lesser-included offense of second-degree wanton endangerment. Whether or not he is to be believed, however, is a decision for the jury, not one for this Court or the trial judge."

4

We now address the merits of the appeal.

## II. Standard of Review and Principles of Controlling Law

"Lesser-included offense instructions are proper if the jury could consider a doubt as to the greater offense and also find guilt beyond a reasonable doubt on the lesser offense." *Parker v. Commonwealth*, 952 S.W.2d 209, 211 (Ky. 1997). We review for an abuse of discretion thus, only where the decision to not give an instruction is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" will the trial court be reversed. *Breazeale v. Commonwealth*, 600 S.W.3d 682, 691 (Ky. 2020).

"A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS[3] 508.060(1). "A person is guilty of wanton endangerment in the second degree when he wantonly engages in conduct which creates a substantial danger of physical injury to another person." KRS 508.070(1). We have previously had occasion to comment on the difference between the two, noting

> The higher degree requires that the conduct be wanton under circumstances manifesting an extreme indifference to the value of human life while the lower degree requires only that the conduct be wanton. The higher degree requires conduct which creates a substantial danger of death or serious physical injury while the lower degree is satisfied by conduct which only creates a substantial danger of physical injury.

---

[3] Kentucky Revised Statutes.

*Combs v. Commonwealth*, 652 S.W.2d 859, 860-61 (Ky. 1983). Despite the differences, "an instruction on a lesser included offense is not required unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but yet conclude that he is guilty of a lesser included offense." *Id.* at 861. "[I]t is the duty of the court to prepare and give instructions on the whole law and this rule requires instructions applicable to every state of case deducible or supported to any extent by the testimony." *Kelly v. Commonwealth*, 267 S.W.2d 536, 539 (Ky. 1954). Trial courts must construe the evidence in favor of the party seeking the instruction. *Allen v. Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011). On appellate review, "Considering the evidence favorably to the proponent of the instruction, we ask . . . whether a reasonable juror could acquit of the greater charge but convict of the lesser." *Id.*

### III.   Analysis

*Brafman v. Commonwealth*, 612 S.W.3d 850 (Ky. 2020) forms the chief legal point of contention in this case although it could not have factored into the Court of Appeals' decision.[4] The Commonwealth argues *Brafman* supports the decision of the trial court below because, in that case, we affirmed a trial court's refusal to give an instruction on a voluntary intoxication defense because the only evidence to support the instruction was the defendant's uncorroborated testimony. *Id.* at 859. "We cannot say that the trial court

---

[4] *Brafman* was published in December of 2020, while the Court of Appeals' decision was rendered two months earlier in October.

6

abused its discretion by refusing to give the instruction for voluntary intoxication, because it was not corroborated by evidence admitted at trial." *Id.* In like manner, so argues the Commonwealth, Taylor's only support for his requested instruction was his uncorroborated testimony and the Court of Appeals' analysis comports with ours in *Brafman.* Taylor argues *Brafman* is distinguishable because the defendant in that case simply testified to not having any memory at all of the alleged crimes taking place, whereas Taylor offered a detailed account of the night in question at the trial below.

Taylor's argument to distinguish *Brafman* is persuasive—there is a compelling difference between uncorroborated testimony that discounts any knowledge of the events in question and testimony which offers a detailed, alternative explanation of said events, and trial courts should be mindful of that distinction. But we further distinguish *Brafman*, and focus our discussion on it, because its rationale depended on voluntary intoxication as an affirmative defense; as such, Brafman had a burden to put on "'some evidence justifying a reasonable inference' that the evidence warranted that instruction." *Breazeale,* 600 S.W.3d at 691 (quoting *Luna v. Commonwealth,* 460 S.W.3d 851, 882 (Ky. 2015)). Moreover, *Brafman* relied on the unpublished case of *Bratcher v. Commonwealth,* No. 2019-SC-000135-MR, 2020 WL 2091864 (Ky. Apr. 30, 2020) for its holding, although noting it was "for demonstrative purposes, [and] not because we are bound by its language." *Brafman,* 612 S.W.3d at 859. In this case, we also have an unpublished decision that is demonstrative, *Miller v. Commonwealth,* No. 2018-SC-000648-MR, 2020 WL

7

1290350 (Ky. Feb. 20, 2020). In *Miller*, we reversed a conviction for first degree wanton endangerment because the trial court failed to give an instruction on the lesser included offense of second degree wanton endangerment. *Id.* at *5. We made that ruling despite the fact "Miller had failed to put on any evidence to support those lesser-included offenses and there was sufficient evidence to prove the charged offenses of first-degree wanton endangerment and burglary." *Id.* Indeed, we boldly stated "[t]he defendant is not required to put on evidence to disprove any element of an offense in order to receive an instruction on a lesser-included offense." *Id.*

Although unpublished cases as a rule are not meant to be cited as official pronouncements of what the law is, it would be disingenuous to say that this Court is not bound by oath and fidelity to consistently apply the law in both published and unpublished decisions. It is difficult indeed to harmonize *Brafman*'s published holding that a refusal to give a jury instruction because the defendant's testimony was uncorroborated was not an abuse of discretion, with *Miller*'s unpublished but otherwise explicit holding that a defendant does not have to put on any evidence discounting an element of a crime in order to receive an instruction on lesser-included offenses. The paradox is resolved, however, by considering the nature of the defenses.

Brafman argued an affirmative defense of voluntary intoxication whereas Miller simply relied on the circumstances of the events in question, and the consequent inadequacy of the Commonwealth's proof demonstrating the requisite elements for first degree wanton endangerment. It has long been held

8

in the civil context that "[i]t is a universal rule of pleading, without exception, that the burden is upon the defendant to establish an affirmative defense." *Cobb v. Farmers & Merchants Bank*, 103 S.W.2d 264, 265 (Ky. 1937). And that rule is equally applicable in the criminal law as well. "[T]he burden of proof in a criminal case, except with respect to certain affirmative defenses, is always on the Commonwealth." *Kirk v. Commonwealth*, 6 S.W.3d 823, 828-29 (Ky. 1999).

> The accused may rely upon some separate matter of defense . . . consisting of facts wholly disconnected from the body of the particular offense charged, and constituting a distinct affirmative defense . . . and the burden of proof to establish such matter is on the accused. Where no such separate and affirmative defense is relied on, but there is merely a plea of not guilty, that plea puts in issue every fact necessary to a conviction, and the burden of establishing those facts beyond a reasonable doubt remains with the commonwealth throughout the trial and never shifts to the accused.

*Commonwealth v. Gentry*, 88 S.W.2d 273, 273 (Ky. 1935). *See also Phillips v. Commonwealth*, 59 S.W.2d 579, 583 (Ky. 1933).

To understand *Brafman* apart from the fact that it involved an affirmative defense would risk extending its holding to an untenable degree. Our law has consistently held that uncorroborated testimony of an accomplice or a victim is enough to support a conviction. *Peak v. Commonwealth*, 197 S.W.3d 536, 545 (Ky. 2006); *Robinson v. Commonwealth*, 459 S.W.2d 147, 150 (Ky. 1970). Yet the uncorroborated testimony of the defendant is not enough to vindicate him? A rule requiring the testimony of a defendant in criminal cases have some independent corroboration before a requested jury instruction will be given would constitute a shift in the burden of proof. It can only be justified in the

9

cases of affirmative defenses where the defendant voluntarily assumes a burden of proof; and even then, we refused in *Brafman* to embrace a bright-line rule that a defendant's testimony must always have some corroboration to merit a requested instruction. 612 S.W.3d at 859.

In this case, Taylor did not assert an affirmative defense. He did not rely on any separate, distinct, or independent facts apart from the circumstances of the crime charged. His entire defense was that his conduct did not amount to "extreme indifference to the value of human life" nor that it constituted any more than a "substantial danger of physical injury." In other words, that he was not guilty of first-degree wanton endangerment. He took the stand to provide his account of the night in support of that defense. It is important to remember that "[w]e permit a trial court to not instruct on lesser-included offenses only where the evidence presents an all-or-nothing proposition, allowing only a single account of the degree of the offense *or* demanding an acquittal." *Swan v. Commonwealth*, 384 S.W.3d 77, 100 (Ky. 2012). Along with A.P.'s testimony, the Commonwealth submitted medical evidence and testimony about the extent and degree of injuries she suffered. No argument is made that this evidence was insufficient to sustain a conviction for first degree wanton endangerment. But the totality of the evidence also did not establish an all-or-nothing proposition. A reasonable juror could have accepted the extent of A.P.'s injuries, while disbelieving her account of events,[5] and thus found that

---

[5] The jury acquitting Taylor on the charge of rape indicates, at the very least, that the jury was not wholly trusting of A.P.'s account of events.

Taylor did not manifest either an "extreme indifference to the value of human life" or that his conduct created "substantial danger of death or serious physical injury[.]" KRS 508.060(1). Nonetheless, a reasonable juror could have believed from the evidence that Taylor's conduct did create a substantial danger of physical injury. KRS 508.070(1). Therefore, there was evidence in the record to support a conviction for second degree wanton endangerment.

Finally, we agree with Judge Caldwell's statement in dissent that trial courts must not usurp the jury's power of determining the facts or credibility of witnesses when deciding whether to give a jury instruction. As she said,

> it is important not to mistake sufficiency of the evidence with its credibility. While the trial court determines whether there is sufficient evidence to include a lesser-included offense in jury instructions, it is the privilege and responsibility of the jury to determine who is to be believed and what is credible. 'Deciding whose version to believe and weighing witness credibility is entirely within the jury's discretion.' *Hall v. Commonwealth*, 337 S.W.3d 595, 610 n.52 (Ky. 2011) (quoting *Robinson v. Commonwealth*, 325 S.W.3d 368, 371 (Ky. 2010)).

"Where the evidence would support a finding of different degrees of a crime, 'the trial court usurps the role of the jury in determining that the evidence did not support a lesser-included offense instruction.'" *Swan*, 384 S.W.3d at 101 (quoting *Parker v. Commonwealth*, 241 S.W.3d 805, 811 (Ky. 2007)). Because Taylor's testimony, if believed by the jury, would have supported a finding of guilt for second degree wanton endangerment, the instruction on that lesser-included offense should have been given. The trial court inappropriately weighed the evidence and declined to give the lesser-included offense instruction because Taylor's testimony was uncorroborated. The Court of

11

Appeals erred in affirming. The law is clear: "The key issue in the present case, as conceded by Appellant, is whether Appellant's wanton conduct manifests 'extreme indifference to human life.' This is a question to be decided by the trier of fact." *Ramsey v. Commonwealth*, 157 S.W.3d 194, 197 (Ky. 2005). The fact that Taylor's account was uncorroborated is not dispositive—as it was for our decision in *Brafman*—because Taylor did not advance an affirmative defense thus, he had no burden of proof.

The dissent contends that no reasonable juror could have reviewed the evidence in this case and entertained a reasonable doubt as to Taylor's guilt for first-degree wanton endangerment. This presupposes that the jury would believe the testimony of the Commonwealth's witnesses and experts. We reiterate that "it is the jury's prerogative, not the court's or the Commonwealth's, to consider all of the evidence and decide whether to accept or reject it." *King v. Commonwealth*, 513 S.W.3d 919, 925 (Ky. 2017). The jury is the sole judge of credibility and may pick and choose what evidence to accept or reject. *Hall*, 337 S.W.3d at 610 n.52. From the record we know that Taylor's jury in fact rejected the Commonwealth's evidence that A.P. was raped, including her own testimony and the testimony of Nurse Corzine, by refusing to convict Taylor on the charge of rape. There is no basis in either the law nor the facts of this case for the dissent's presupposition.

The dissent also characterizes Taylor's testimony as "implausible" and "self-serving," charging that our ruling "require[s] juries to consider patently impossible theories of a case . . . ." Respectfully, the dissent is simply weighing

12

the evidence which courts are not permitted to do. Moreover, we have held time and again that "no matter how preposterous, any defense which is supported by the evidence must be submitted to the jury. 'It is the privilege of the jury to believe the unbelievable if the jury so wishes.'" *Taylor v. Commonwealth*, 995 S.W.2d 355, 361 (Ky. 1999) (quoting *Mishler v. Commonwealth*, 556 S.W.2d 676, 680 (Ky. 1977). *See also King*, 513 S.W.3d at 925; *Brafman*, 612 S.W.3d at 859 n.20.[6] Taylor's testimony is evidence. If the jury had chosen to believe him, then his testimony would have met the elements of second-degree wanton endangerment. And because it is the "duty of a trial court to instruct a jury on lesser included offenses when it is so requested and it is justified by the evidence," *Martin v. Commonwealth*, 571 S.W.2d 613, 615 (Ky. 1978), the failure to give the requested jury instruction that is supported by the evidentiary record is "error[.]" *Id.*

## IV. Conclusion

Where a defendant has pled not guilty and restricted his defense to disputing the circumstances of the elements of the crime charged, his uncorroborated testimony in support of that defense will generally merit a jury instruction, because it is the jury's authority to determine the facts and accord weight and credibility to evidence. When the defendant's testimony is of such a nature that "the evidence presents an all-or-nothing proposition," a lesser-

---

[6] This rule is almost a hundred years old in fact. Courts have held as early as 1925 that even where a defense is likely a "sham or subterfuge[,]" so long as the there is testimony to support it, "it is supported by substantial evidence [and] the question is for the jury and not for the court." *Nall v. Commonwealth*, 271 S.W. 1059, 1060 (Ky. 1925).

included offense instruction is not warranted. *Swan*, 384 S.W.3d at 100. Moreover, in exceptional cases where the defendant's testimony is *prima facie* fantastical or absurd, uncorroborated testimony will not support a jury instruction. *Lackey v. Commonwealth*, 468 S.W.3d 348, 354-55 (Ky. 2015) (affirming trial court's refusal to give jury instruction on third degree escape because evidence was incontrovertible that defendant was in custody of Commonwealth for a felony conviction when he escaped).

Trial courts must be cautious, however, to avoid inadvertently shifting the burden of proof onto the defendant. It can be that merely through cross-examination of the Commonwealth's witnesses and other impeachments of evidence, that the defendant has elucidated additional facts or called into question the allegation of the Commonwealth, that could cause the jury to "doubt as to the greater offense" but nonetheless "find guilt beyond a reasonable doubt on the lesser offense." *Parker*, 952 S.W.2d at 211. Therefore, there is no bright line rule that a defendant has to testify, much less that his testimony must be corroborated, to receive a lesser-included offense instruction. *Thomas v. Commonwealth*, 587 S.W.2d 264, 266 (Ky. App. 1979) ("Indeed, under the Fifth Amendment privileges of the Constitution of the United States, the defendant need give no testimony.").

In those cases where a defendant pursues an affirmative defense, thus taking on the burden of demonstrating the truth of that defense, uncorroborated testimony alone may not always suffice to merit an instruction, as we held in *Brafman*. 612 S.W.3d at 859. We reiterate, however, that this is

14

not a bright line rule and even in cases where an affirmative defense has been asserted, uncorroborated testimony could merit a jury instruction. *Id.* The fact that giving a jury instruction is discretionary necessarily implies a case-by-case assessment. But in all cases trial courts must avoid substituting its own beliefs as to truthfulness and credibility when considering what instructions to give the jury.

Consequently, we hold the trial court abused its discretion in failing to give a jury instruction on second degree wanton endangerment. Taylor's uncorroborated testimony was evidence in the record that would support a guilt determination on second degree wanton endangerment thus, the jury ought to have received that instruction. We reverse the Court of Appeals and vacate Taylor's conviction on first degree wanton endangerment, as well as the persistent felony offender conviction concomitant with it. We remand to the Jefferson Circuit Court for further proceedings consistent with this opinion.

All sitting. VanMeter, C.J.; Keller, Lambert, Nickell, and Thompson, JJ., concur. Bisig, J., dissents by separate opinion.

BISIG, J., DISSENTING: With today's majority decision, trial courts will be required to give lesser-included offense instructions even where uncontroverted medical proof unequivocally disproves a defendant's wholly implausible self-serving testimony. The majority's result diverges from our requirement that lesser-included offense instructions be provided only where, under the totality of the evidence, "'a reasonable juror could entertain a *reasonable* doubt of the defendant's guilt on the greater charge.'" *Allen v.*

15

*Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011) (quoting *Osborne v. Commonwealth*, 43 S.W.3d 234, 244 (Ky. 2001)) (emphasis added). And in finding that the trial court abused its discretion, the majority decision fails both to acknowledge the trial court's unique role in crafting jury instructions after hearing all the evidence presented at trial or to afford the latitude we typically grant trial courts in the navigation of that task. Therefore I respectfully dissent.

## ANALYSIS

A trial court should instruct on a lesser-included offense if, and only if, under the evidence presented a reasonable juror could have reasonable doubt as to the defendant's guilt for the greater charge but find beyond a reasonable doubt that the defendant is guilty of the lesser charge. *Id.* On appeal, we review allegations that a trial court erred in refusing a requested jury instruction for abuse of discretion. *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018). In so doing, we construe the evidence in favor of the proponent of the instruction and ask "whether a reasonable juror could acquit of the greater charge but convict of the lesser." *Allen*, 338 S.W.3d at 255.

As the majority correctly notes, a conviction for first-degree wanton endangerment requires two findings. First, the jury must find that the defendant manifested extreme indifference to the value of human life. KRS[7] 508.060(1). Second, the jury must also find that the defendant's conduct

---

[7] Kentucky Revised Statute

16

wantonly created a substantial danger of *death or serious physical injury* to another. *Id.*

A conviction for second-degree wanton endangerment requires neither of these findings. Rather, a jury need conclude only that the defendant's conduct wantonly created a substantial danger of *physical injury* to another person. KRS 508.070(1). As such, a lesser-included offense instruction on second-degree wanton endangerment is warranted only if a reasonable juror considering the totality of the evidence could have reasonable doubt either that the defendant manifested extreme indifference to the value of human life or that he wantonly engaged in conduct creating a substantial risk of death or serious physical injury.

Here, a reasonable juror considering the evidence presented at trial could have entertained no reasonable doubt as to either of these elements. Though Taylor testified he did not strangle A.P., that he had his hand on her neck for "maybe a second" and "didn't hold it on her," and that the altercation "didn't last long," the uncontroverted medical proof at trial flatly and unequivocally disproved his testimony. Nurse Corzine, the sexual assault nurse examiner who examined A.P. after the incident and the only medical professional to testify in the case, testified that A.P. had numerous visible injuries. She testified those injuries included numerous indicia of strangulation, including redness and swelling of the eyes, bleeding in the whites of the eyes, petechiae in the eyes and mouth, abrasions, erythema, contusions, and swelling on the side of her tongue. The jury was shown authenticated photographic proof of

17

these injuries. Nurse Corzine also testified that during the examination A.P. reported a number of symptoms consistent with strangulation, including seeing of spots, loss of bladder control, loss of consciousness, dizziness, weakness, nausea, vomiting, and tingling in her legs.

In considering this uncontroverted medical proof, no reasonable juror could believe Taylor's account that he merely placed his hand on A.P.'s neck for "maybe one second" and "didn't hold it on her." The extensive injuries suffered by A.P. and the symptoms she reported experiencing are wholly inconsistent with a mere single-second touch of the neck. Put simply, Taylor's account was wildly implausible given the medical proof presented at trial.

Moreover, the medical proof of the extensive and severe nature of A.P.'s injuries also forecloses any reasonable doubt that Taylor's conduct created only a danger of physical injury rather than serious physical injury or death. Indeed, Nurse Corzine testified that the strangulation was a severe and life-threatening event. It likewise forecloses any reasonable doubt that in attacking A.P., Taylor did not manifest extreme indifference to human life. I therefore cannot find that the trial court erred—much less that it abused its discretion—in refusing to give an instruction regarding wanton endangerment in the second degree.

To be clear, I take no issue with the majority's statement that "there is no bright line rule that a defendant has to testify, much less that his testimony must be corroborated, to receive a lesser-included offense instruction." Certainly there are cases where the evidence presented is sufficient to warrant

18

a lesser-included offense instruction even though the defendant does not testify. Consistent with our general rule, a lesser-included offense instruction is also warranted where the defendant's testimony, even standing alone, could lead a reasonable juror to have reasonable doubt as to his guilt for the greater charge but find beyond a reasonable doubt that he is guilty of the lesser charge.

This however is not such a case. There was no dispute as to whether Taylor was with A.P. on the night of the attack. He testified that he was. There was no proof to suggest someone else caused A.P.'s injuries. And there was no proof that Taylor did not touch A.P.'s neck. To the contrary, he acknowledged doing so. Indeed, Taylor explicitly testified that he "reached and grabbed [A.P.] and forced her down on the bed," that he grabbed her "on her neck," and that he did so willfully and with a grip. The uncontroverted medical proof showed the force and extent of that touching, leaving Taylor's testimony wholly unbelievable. In declining to instruct as to second-degree wanton endangerment, the trial court did not improperly substitute itself as the trier of fact but rather appropriately determined the evidence did not warrant such an instruction. We should not require juries to consider patently impossible theories of a case and I find no abuse of discretion in the trial court's refusal to do so here.

**CONCLUSION**

In sum, I disagree with the majority's conclusion that the trial court abused its discretion in refusing Taylor's request for an instruction as to

19

second-degree wanton endangerment. A reasonable juror could not have reasonable doubt on the evidence presented at trial either that Taylor manifested extreme indifference to the value of human life or that he wantonly created a substantial danger of death or serious physical injury to A.P. Accordingly, because I conclude the trial court did not abuse its discretion in refusing to instruct as to wanton endangerment in the second degree, I would affirm the Court of Appeals and the judgment and sentence rendered by the trial court.

COUNSEL FOR APPELLANT:

Joshua M. Reho
Louisville Metro Public Defender's Office

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General